PITMAN, J.
| plaintiff Calvin Arrant[1] appeals the judgment of the Workers’ Compensation Judge (“WCJ”) in favor of Defendants Wayne Aeree PLS, Inc., and its insurer, the Louisiana Workers’ Compensation Corporation (“LWCC”). For the following reasons, we affirm.

FACTS

On June 30, 2012, Mr. Arrant injured his back when the company vehicle he was driving was hit by an 18-wheeler that ran a red light. On May 1, 2013, Mr. Arrant filed a disputed claim for compensation (“Form 1008”) seeking medical treatment, i.e., a lumbar MRI and a Left SI nerve block. He alleged that Defendants refused to provide tests and procedures recommended by his treating physician and requested that Defendants pay penalties; court costs, attorney fees and the cost for tests and procedures.
On May 14, 2013, Defendants filed an answer and general denial. They asserted an exception of prematurity concerning the dispute over the medical necessity of a Left SI nerve block, stating that the medical director of the Office of Workers’ Compensation (“OWC”) must first issue a decision concerning the medical necessity of the procedure. They asserted an exception of no cause of action concerning the dispute over the medical necessity of an MRI, arguing that judicial review of the denial should be sought within 15 days of the determination.
On May 14, 2013, Mr. Arrant filed a first supplemental and amending 1008. He stated that Defendants refused to allow him to be seen and treated by 12an orthopedic surgeon of his choice, i.e., Dr. Douglas Brown; and, therefore, his counsel had to pay $600 for this examination. Mr. Arrant contended that he is entitled to reimbursement for the $600 and for $800 paid for an MRI recommended by Dr. Brown that was denied by Defendants. He argued that Defendants should pay penalties and attorney fees for the wrongful refusal to provide treatment.
On May 15, 2013, Mr. Arrant filed a second supplemental and amending 1008, stating that Defendants refused to allow him to see the neurosurgeon of his choice, i.e., Dr. Bernie McHugh. Mr. Arrant also filed a motion for treating physician and requested that Defendants show cause why they should not pay for treatment by the physician of his choice.
On July 2, 2013, Defendants filed an answer to the first and second amended 1008, stating that the Louisiana Workers’ Compensation Act (“LWCA”) gives a claimant the right to choose a treating physician without prior approval. They asserted an exception of no cause of action as to Mr. Arrant’s claim that he is entitled to reimbursement of $600 for the deposit made to Dr. Brown. They further contended that the LWCC is only required to pay for authorized treatment given in accordance with the medical treatment guidelines and is not required to pay deposits. They also reasserted their exception of no cause of action as to the $800 for an MRI and stated that the parties resolved the issue of choice of neurosurgeon.
On July 22, 2013, a hearing was held on the pretrial motions. The defense withdrew the exception of no cause of action because, as set forth in the Louisiana Code of Civil Procedure, evidence could not be *324 introduced in support of this exception and the pleadings did not contain sufficient | ¡¡information to support their arguments.
On the morning of trial, January 9, 2014, Defendants filed a peremptory exception of preemption, or alternatively, prescription,[2] stating that Mr. Arrant requested review of the medical director’s denial of the request to perform an MRI more than 15 days after the denial. At Mr. Arrant’s request, the WCJ referred the exception to the merits, and a trial began on the merits of the case.
The, WCJ noted that the parties stipulated to Mr. Arrant’s employment, that “he was involved in an accident within the course and scope of his employment” and that he was “receiving temporary, total disability benefits.”
Phillip Deal, a personal injury attorney, testified that he consulted with Mr. Arrant about the automobile accident.[3] He noted that Mr. Arrant continued to work after the accident, but that his condition worsened with pain radiating into his legs. Mr. Deal stated that, from his years of personal injury work, he recognized this symptom as a lumbar disc injury that necessitated examination by an orthopedist or a neurosurgeon and an MRI. He testified that his office scheduled an appointment for Mr. Arrant with Dr. Brown, whose policy was to be paid in advance or to have approval from an insurer and then bill the insurer. He further testified that he had to pay $600 for the August 16, 2012 appointment because he was unable to determine the identity of the workers’ compensation carrier prior to the appointment, despite inquiries to the ^employer by himself, Mr. Arrant and Dr. Brown’s office. Mr. Deal stated that Dr. Brown suspected that Mr. Arrant had a lumbar disc injury and wanted to have an MRI performed to confirm or rule out that suspicion. He also stated that, in late August or early September 2012, the LWCC denied the MRI request on.two occasions. After each denial, he filed a 1009 form with the medical director of the OWC to review the LWCC’s denial, and both were denied by the medical director. Mr. Deal testified that he then paid $800 for the MRI because Mr. Arrant was still experiencing pain in his legs. He noted that, in October 2013, he was reimbursed the $600 deposit by Dr. Brown.
Mr. Arrant testified that he worked for Wayne Aeree PLS, Inc., as a surveyor and that he was involved in a work-related accident on June 30, 2012, while operating a company vehicle. He stated that, after the accident, he returned to work and spoke with Mr. Aeree about the pain he was experiencing. He testified that he told Mr. Aeree on multiple occasions that he would like to see a doctor, and Mr. Aeree responded that he did not have any insurance information. Mr. Arrant noted that the pain in his back worsened and he had trouble working, so he contacted an attorney, Mr. Deal, to help him receive medical treatment for his back. He further noted that he and the staff at Dr. Brown’s office unsuccessfully attempted to obtain information on workers’ compensation, so Mr. Deal paid the $600 deposit for him to see Dr. Brown. He stated that he met several times with Dr. Brown, who recommended an MRI, but several MRI *325 requests were denied by Defendants. Mr. Deal then paid $800 for him to have an MRI. Mr. Arrant noted that he began seeing a neurosurgeon and a pain management doctor "with the help of his current attorney, Daniel Street. He described his pain as lower back pain that radiates | finto his legs and feet and pain and tingling in his shoulder, noting that he uses a cane due to the numbness in his left leg. He also stated that he stopped working two months after the accident.
Mr. Aeree testified that he was Mr. Arrant’s employer and that Mr. Arrant was an instrument man whose duties included carrying a 20-pound survey instrument in the woods and over rough terrain. He stated that he discussed the accident with Mr. Arrant, but could not recall him indicating that he was injured or requesting to see a doctor. Mr. Aeree noted that he received a letter from Mr. Deal and then contacted the LWCC. He also stated that he did not recall having conversations with Mr. Deal or Dr. Brown’s office about workers’ compensation.
Margaret Dearman, a senior claims representative with the LWCC, testified that the LWCC received a letter from Mr., Street requesting that he be allowed to exercise his choice of neurosurgeons. She stated that she faxed approval directly to Dr. McHugh. She also testified about a HIPPA form from Dr. Brown with the date of service as August 16, 2012, in the amount of $600 that was sent to the LWCC, noting that this bill was paid in October 2013 according to the Louisiana Fee Schedule.
Both parties filed post-trial briefs.
On April 21, 2014, the WCJ provided oral reasons for judgment. Regarding the timely payment of the $600, the WCJ stated that Defendants received the bill on October 17, 2013, and that it was paid November 30, 2013, which was within the 60-day requirement of La. R.S. 23:1201(E)(1). Regarding the exception of prescription, the WCJ stated that, pursuant to Section 2715(E) of the Utilization Review Procedures, a party feeling | (-aggrieved by a determination of the medical director shall seek judicial review within 15 days of the determination. She stated that the medical director faxed his determinations on September 18, 2012, and October 19, 2012, but that a 1008 form appealing the decision was not filed until May 1, 2013. Accordingly, the WCJ stated that she was precluded from reviewing the issue of whether the medical director failed to appropriately apply the medical treatment guidelines in denying the MRI. Regarding the timeliness of authorization for examination by Dr. McHugh, the WCJ stated that approval was requested on April 17, 2013, and that authorization was faxed to his office on May 16, 2013, which was timely pursuant to La. R.S. 23:1122 and 1201.
On April 29, 2014, the WCJ filed a judgment stating that (1) the $600 bill was timely paid; (2) Defendants’ peremptory exception of prescription is granted; (3) the LWCC provided timely authorization for Mr. Arrant to be examined by his choice of neurosurgeon; and (4) all costs are assessed to Mr. Arrant and the matter is dismissed with prejudice.
Mr. Arrant appeals the judgment of the WCJ.

DISCUSSION

Peremptory Exception of Prescription

In his first assignment of error, Mr. Arrant argues that the WCJ erred in granting the exception of prescription, thereby refusing to review the medical director’s denial of the MRI requests and upholding the 15-day time limit illegally fixed by the medical director. He con *326 tends that the 15-day time limit is not contained in La. R.S. 23:1203.1 and was administratively set by the medical director. He notes that the statute fixes a period of 15 days to file an |7appeal with the medical director for a denial by the insurer, but that it does not set a time limit to appeal a denial by the medical director. He further contends that the legislature intended that usual prescriptive periods under the LWCA apply to the filing of a 1008 appeal of the medical director’s determination. He argues that, because his appeals were timely filed, the WCJ should have reviewed the medical director’s denial of the MRI requests.
Defendants argue that the WCJ correctly granted the exception of prescription because the 15-day appeal period is set forth in the Utilization Review Procedures. They agree that this time limit is not set forth in La. R.S. 23:1203.1, but explain that the legislature delegated authority to the Director of the OWC to establish such a rule. Defendants contend that the 15-day period comports with the legislative purpose to speed up the resolution of medical-necessity disputes.
In Church Mut. Ins. Co. v. Dardar, 13-2351 (La.5/7/14), 145 So.3d 271, the Louisiana Supreme Court discussed La. R.S. 23:1203.1 and stated:
Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS’ COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. Id. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. Id. Thus, La. R.S. 23:1203.1 was enacted with the express intent “that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and Rtimely manner to injured employees.” La. R.S. 23:1203.1(L).
In its current form, La. R.S. 23:1203.1 instructs the Director of the OWC to “promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to. establish a medical treatment schedule.” La. R.S. 23:1203.1(B). To this end, the Director is tasked with appointing a medical advisory council, to be comprised of at least one representative from eight enumerated areas of medical practice and a medical director. La. R.S. 23:1203.1(F). The council, with the assistance of the medical director, is directed to develop guidelines to be established and promulgated as the medical treatment schedule. La. R.S. 23:1203.1(E) and (G). These guidelines must meet specific criteria outlined in the statute. Id. Once the medical treatment schedule is promulgated, the Director of the OWC and the medical advisory council are charged with reviewing and updating the schedule. no less often than once every two years. La. R.S. 23:1203.1(H).
(Footnotes omitted.)
*327 La. R.S. 23:1291(B) sets forth further powers, duties and functions of the director of the OWC, which include:
(5) To establish and promulgate in accordance with the Administrative Procedure Act such rules and regulations governing the administration of this Chapter and the operation of the office as may be deemed necessary and which are not inconsistent with the laws of this state.
[[Image here]]
(10) To require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal, and to resolve disputes over the necessity, advisability, and cost of same.
(11) To engage the services of qualified experts in the appropriate health-care fields to assist him in the discharge of his responsibilities in Paragraph (10) of this Subsection, and to establish fees and promulgate rules and procedures in furtherance of his performance of these duties.
[[Image here]]
(13) To promulgate necessary rules and regulations in accordance with the provisions of the Administrative Procedure Act, imposing reasonable fines or penalties for a failure to comply with any rule or regulation adopted under the provisions of this Chapter. In no event shall such fine or penalty exceed five hundred |fldollars.
La. R.S. 23:1203.1(J) and (K) set forth the procedures for disputing the medical treatment schedule and decisions of the medical director. When the accident occurred on June 30, 2012,[4] these sections stated:
J. After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
K. After the issuance of the decision by the medical director of the office, any party who disagrees with the medical director’s decision, may then appeal by filing a “Disputed Claim for Compensation”, which is LWC Form 1008. The decision of the medical director may be overturned when it is shown, by clear and convincing evidence, the decision of *328 the medical director or associate medical director was not in accordance with the provisions of this Section.
Title 40, Part 1, Chapter 27, Section 2715B(3)(f), i.e., the Utilization Review Procedures for Labor and Employment, adds additional procedures and time limitations for challenging the determination of the medical director and states:
In accordance with LAC 40:I.5507.C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a | ^workers’ compensation district office within 15 calendar days of the date said determination is mailed to the parties. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director’s decision has been filed. Upon receipt of the appeal, the workers’ compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 days nor more than 30 calendar days after the receipt of the appeal by the office. The workers’ compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner.
As stated in La. R.S. 23:1291(B) and La. R.S. 23:1203.1(B), the legislature provided the director of the OWC with the power to promulgate rules and regulations to expedite the process of workers’ compensation claims in order to further its intent of providing services to injured employees in an “efficient and timely manner.” La. R.S. 23:1203.1(L). The director of the OWC acted within its authority when promulgating the 15-day appeal period set forth in Title 40, Part 1, Chapter 27, Section 2715B(3)(f). The 15-day period comports with the legislature’s intent. Further, this time period is not unreasonable, notably in light of the fact that a claimant may file subsequent requests for review of the medical director’s decision. Therefore, the trial court did not err in applying the 15-day period for review of the medical director’s denial. The medical director faxed his determinations on September 18, 2012, and October 19, 2012, but Mr. Arrant did not file a 1008 form appealing those decisions until May 1, 2013. Because Mr. Arrant failed to file a 1008 form challenging the medical director’s determination within 15 days of the decision, the trial court did not err in granting Defendants’ peremptory exception of prescription.
Accordingly, this assignment of error is without merit.

Decision of Medical Director to Deny MRI and Reimbursement

In his second assignment of error, Mr. Arrant argues that the WCJ erred Inin failing to overturn the decision of the medical director denying the MRIs, thereby denying recovery of the $800 spent for that test, and in failing to award penalties and attorney fees for the denial. He details the findings of Dr. Brown and of the medical director and states that, according to documents attached to the medical director’s decision, an MRI may provide useful information for spinal disorders.
Defendants argue that it is premature for this court to address the merits of the appeal of the decision of the medical director concerning the, MRI. They contend that, if this court finds the appeal was in fact timely, the proper procedural remedy would be to remand to the WCJ for the purpose of addressing the merits of the appeal.
In accordance with our finding that the WCJ did not err in granting the peremptory exception of prescription, we find no error in declining to address the merits of the medical director’s determinations.
*329 Accordingly, this assignment of error is ■without merit.

Choice of Orthopedic Surgeon and Reimbursement

In his third assignment of error, Mr. Arrant argues that the WCJ erred in declining to award penalties and attorney fees for the failure of Defendants to provide treatment by his choice of orthopedic surgeon and to timely reimburse Mr. Deal for the $600 paid to Dr. Brown, noting that it took 14 months to receive the $600 refund.
Defendants argue that they timely authorized medical care with Dr. Brown. They note that a health care provider may incur, without the consent of the employer or insurer, up to $750 in non-emergency diagnostic testing or treatment; and, therefore, there was no requirement that Dr. Brown |12obtain the LWCC’s authorization to incur the $600 charge because it fell below the $750 threshold. They further argue that the LWCC timely paid the charges associated with the initial visit to Dr. Brown once those charges were properly submitted pursuant to the Louisiana Administrative Code.
La. R.S. 23:1142 sets forth the law on the approval of health care providers and fees. La. R.S. 23:1142(B)(l)(a) states:
Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemer-gency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
La. R.S. 23:1142(D) states:
If the payor has not consented to the request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction in an action brought either by the employee or the health care provider that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee or health care provider bringing the action for reasonable attorney fees related to this dispute and to the employee for any medical expenses so incurred by him for an aggravation of the employee’s condition resulting from the withholding of such health care provider services.
The Louisiana Administrative Code provides further procedures for billing services. Title 40, Part 1, Chapter 51, Section 5111(A) states:
The HCFA 1500 Form is to be used by health care providers except dentist, pharmacy, hospital (unless otherwise stated), and for home and vehicle modifications for billing services provided to workers’ compensation claimant. Do not use any other form. A sample HCFA 1500 Claim Form and detailed instruction for proper completion of the form follows.
11sSection 5101(B)(4) states:
Statements of charges shall be made in accordance with standard coding methodology as established by these rules, ICD-9-CM, HCPCS, CPT-4, CDT-1, coding manuals. Unbundling or fragmenting charges, duplicating or over-itemizing coding, or engaging in any oth *330 er practice for the purpose of inflating bills or reimbursement is strictly prohibited. Services must be coded and charged in the manner guaranteeing the lowest charge applicable. Knowingly and willfully misrepresenting services provided to workers’ compensation claimants is strictly prohibited.
La. R.S. 23:1201 sets forth provisions for the payment of compensation, and- Part E(l) states:
Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof, if the provider of medical services is not utilizing .the electronic billing rules and regulations provided for in R.S. 28:1203.2.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dep’t, 09-0520 (La.10/20/09), 23 So.3d 275, citing Winford v. Conerly Corp., 04-1278 (La.3/11/05), 897 So.2d 560; Morgan v. Glazers Wholesale Drug Co., 46,692 (La. App.2d Cir.11/2/11), 79 So.3d 417, citing Dean v. Southmark Const., 03-1051 (La.7/6/04), 879 So.2d 112. Under the manifest error rule, the reviewing court does not decide whether the fact finder was right or wrong, but only whether its findings are reasonable. Buxton v. Iowa Police Dep’t, supra, citing Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993); Morgan v. Glazers Wholesale Drug Co., supra.
In this case, the trial court’s findings that the $600 bill for Dr. Brown’s services was timely paid is not manifestly erroneous. A demand by a claimant for reimbursement for out-of-pocket expenses is insufficient to trigger a reimbursement obligation. Once the LWCC received the proper form on 114October 17, 2013, it timely reimbursed the funds on November 30, 2013, which was within the 60-day requirement of La. R.S. 23:1201(E)(1).
Accordingly, this assignment of error lacks merit.

Unreasonable Delay for Choice of Neurosurgeon

In his fourth assignment of error, Mr. Arrant argues that the WCJ erred in failing to award penalties and attorney fees for the unreasonable delay in providing treatment by Mr. Arrant’s choice of neurosurgeon. He notes that La. R.S. 23:1201(F) provides for penalties and attorney fees for failure to consent to the employee’s request to select a treating physician and imposes a $50 per day penalty for every day that consent is withheld. He asserts that, in this case, consent was withheld for 29 days.
Defendants argue that the LWCC timely authorized an evaluation by Mr. Arrant’s choice of neurosurgeon, noting that it received the request on April 23, 2013, and faxed authorization to Dr. McHugh on May 16, 2013. They contend that this short delay was reasonable, noting that, at the time of the request, litigation was ongoing and it was reasonable for the LWCC to contact its attorney regarding the request. Defendants further note that, pursuant to La. R.S. 23:1201(E)(1), the employer or insurer has 60 days to act upon a request without exposure to penalties or attorney fees.
La R.S. 23:1201(F) states, in part:
Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change .physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical bene *331 fits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or hr,such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the' merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res 'judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing....
The trial court’s finding that the LWCC provided timely authorization for Mr. Arrant to be examined by his choice of neurosurgeon is not manifestly erroneous. Mr. Arrant contacted the LWCC by letter dated April 17, 2013, which it received on April 28, 2013. The LWCC provided authorization on May 16, 2013, which is within the statutory provisions. Further, the delay was not unreasonable considering the fact that litigation had begun in this case.
Accordingly, this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Workers’ Compensation Judge against Plaintiff Calvin Arrant and in favor of Defendants Wayne Aeree PLS, Inc., and the Louisiana Workers’ Compensation Corporation. Costs of appeal are assessed to Mr. Arrant’s survivors, his wife and two children, Michele Arrant, individually and on behalf of the minor, Allison Michele Arrant, and Stacie Renae Arrant Glenn, respectively, who were substituted as plaintiffs in this case.
AFFIRMED.

. After the trial, Mr. Arrant passed away from causes unrelated to the injuries for which he claimed workers’ compensation benefits. His wife and two children, Michele Arrant, individually and on behalf of the minor, Allison Michele Arrant, and Stacie Renae Arrant Glenn, respectively, were substituted as plaintiffs in this case.

. We note that La. C.C.P. art. 927 provides for a peremptory exception of prescription, but not a peremptory exception of "preemption.” Therefore, we will refer to this exception as a peremptory exception of prescription throughout the remainder of this opinion.

. He explained that he initially became involved in Mr. Arrant’s case because of the tort aspect of the automobile accident, but eventually turned the case over to Mr. Arrant's current attorney, Daniel Street, who specializes in workers' compensation.

. La. R.S. 23:1203.1 was amended in 2012, 2013 and 2014. The 2013 amendment added provisions for an assistant medical director in. Sections (J) and (K). 2013 La. Acts No. 317. None of the amendments changed the substance of the statute. Act 317 also added part J(2), which provides the procedure to be followed in the event a potential conflict of interest arises.