858 So.2d 593 (2003)
REGIONS BANK
v.
AUTOMAX USA, L.L.C.
No. 2002 CA 1755.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Writ Denied November 7, 2003.
*594 Before: FOIL, McCLENDON, and KLINE,[1] J.J.
McCLENDON, J.
This is an appeal from a judgment approving the amount of attorney fees paid by the receiver to his law firm for services rendered on behalf of an automobile business placed in receivership. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Regions Bank (Regions), filed a petition on February 24, 2000, requesting the ex parte appointment of a temporary receiver for defendant, Automax, U.S.A., L.L.C. (Automax), a business engaged in the sale of used automobiles. Regions asserted in its petition that it was one of the largest creditors of Automax, that Automax moved vehicles used as collateral the night before Regions attempted to seize them, that the principal of Automax fled the state after cashing out the bank accounts of Automax, that Automax was essentially out of business with no one controlling its remaining assets, and that because of fraud or breach of trust, the appointment of a temporary receiver was required. Regions further requested that Barry W. Miller be appointed the temporary receiver of Automax, pursuant to LSA-R.S. 12:151 C.[2] Miller was appointed temporary receiver of Automax and subsequently appointed permanent receiver by judgment dated March 20, 2000.[3]
Between April 2000 and July 2001, Miller filed seven ex parte applications for interim compensation, requesting fees for professional services rendered by his law firm, computed on an hourly basis, all of which were approved by the trial court. A *595 final application for compensation was filed on September 12, 2001, together with the receiver's final report and final account and request for termination of the receivership.[4] This last application brought the total amount of attorney fees requested to $191,185.00. Regions objected to the final application for compensation, having filed a motion to set and determine the reasonableness of the receiver's fees. The matters were consolidated for hearing and on January 29, 2002, the trial court signed its Final Order of Receivership, approving all applications and requests for reimbursements of costs and expenses filed by the receiver, including the last application for attorney fees, further ordering that all remaining funds of the receivership be placed in the registry of the court and ordering that the receivership of Automax be terminated and the receiver relieved of any further duties and obligations under the terms of the receivership.
It is from this judgment that Regions appealed asserting six assignments of error, all relating to the reasonableness of the compensation paid to the receiver.[5]

DISCUSSION
There was no dispute over the appointment of the receiver for Automax and, in fact, Regions recommended that Miller be appointed receiver. Moreover, in its motion to set the reasonableness of the receiver's fees, Regions states that the "[r]eceiver and his staff have done a good job in liquidating the assets of the consolidated entities and setting up an appropriate procedure to bring claims before the Court for ranking and payment.
In addition, Receiver has dealt with numerous complaints and phone calls from the public, state and federal police and regulatory agencies concerning this matter." Regions later stated that it recognized "that while the Receiver has done a good and sometimes excellent job in liquidating this problematic series of entities, receiverships are not in and of themselves for the payment and satisfaction of the receiver. The Receiver has never sought court approval for his fees as administrator, but has simply submitted ex parte payment requests."
Thus, Regions does not complain about the quality of the work by the receiver. Regions does assert, however, that the amount of attorney fees paid to Miller was unreasonable and that the fees should not have been approved on an interim ex parte basis. With regard to the reasonableness of the attorney fees, Regions claims that the receiver, as the attorney for the receivership, was compensated for services administrative in nature and for services that were duplicative and unnecessary, and that the receiver's compensation was too great in comparison to the funds received by the receivership.
The trial court has much discretion in fixing an award of attorney fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. In re Succession of Bankston, XXXX-XXXX, p. 7 (La.App. 1 Cir. 2/14/03), 844 So.2d 61, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 400; Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd., 554 So.2d 1347, 1355 (La.App. 1 Cir.1989).
*596 An attorney fee must be "reasonable." The amount is regulated by the Rules of Professional Conduct. Ducote v. Perry's Auto World, Inc., 98-1972, p. 6 (La.App. 1 Cir. 11/5/99), 745 So.2d 229, 233. Pursuant to Rule 1.5(a) of the Rules, factors to be considered in determining the reasonableness of a fee include:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
8) Whether the fee is fixed or contingent.
An analysis of the factors pertinent to a determination of reasonableness is extremely fact intensive. At issue ultimately is the reasonable value of the services rendered and value received by the client. Bankston, XXXX-XXXX at pp. 5-6, 844 So.2d at 64-65. Thus, at issue in this matter is the value of the services by Miller to the receivership.
It is undisputed that the Automax receivership was a difficult one. The principal of Automax fled the state taking with him what cash was available in the company's bank accounts, as well as most of Automax's books and records. Former Automax employees were not available to aid the receiver and, in fact, apparently did what they could to hinder the receivership. Also, what records were available, were seized by the Louisiana State Police as well as the hard drives and software of the computers of Automax. The hard drives were sent to the Federal Bureau of Investigation for copying and recovery, and remained in the possession of the FBI for more than a year. Thus, the records of Automax were not readily available and the receiver had to reconstruct them.
The receiver sold the vehicles that Automax still had in its possession and attempted to retrieve and sell vehicles in the possession of former employees of Automax. The receiver also made attempts to collect on notes due from customers of Automax. A collection agency and a collection attorney were employed, both on a contingency basis, to aid in the collection of the notes. The potentially collectable notes were eventually sold.
Furthermore, Automax did not forward taxes and registration to the State of Louisiana for many of the vehicles it sold and Automax also did not forward a number of the customers' warranty payments to the respective warranty providers. Thus, Automax created numerous title and warranty problems. The receiver was required to negotiate with over two hundred customers of Automax to either return the vehicles involved and cancel the notes or reduce the note amounts because of the breaches of duties or agreements by the former management of Automax.
Additionally, the Louisiana Used Motor Vehicle and Parts Department and the Office of Motor Vehicles would not issue title and registration to certain customers who purchased vehicles in good faith because of Automax's actions prior to the receivership. This created what the receiver called a "standoff" between the customers and various state agencies, resulting *597 in loss of money in loan collections and time expended because of the uncooperativeness of the state agencies involved.
The Internal Revenue Service, the Louisiana Department of Revenue and Taxation, and the Louisiana Department of Labor contacted the receiver regarding past due returns. A federal tax lien was filed against Automax.
The receiver determined what was the best course of action to avoid expensive and protracted litigation and settled disputes in what it believed was the most expeditious and inexpensive manner. The record shows that by the end of the receivership, the receiver had collected $297,056.96.
At the hearing on the motion to set the reasonableness of the attorney fees, Regions declined to cross-examine Miller or Suzanne Sasser, an associate of Miller also employed in this matter. Nor did Regions offer any evidence to contradict or challenge the billing statements filed with the trial court in support of the applications for compensation.
Region's argument seems to be that the amount of the attorney fees, in light of the assets collected, is unreasonable per se. We reject that argument. Preserving the assets of the receivership is one factor in determining the reasonableness of the attorney fees under the particular facts of this case.
The receiver did hire his own law firm to work out these many problems and did so without court approval. While it is troublesome that in every other instance when the receiver sought to hire outside help he first requested authorization from the trial court, there is no statutory requirement that he do so.[6] The legal work performed was necessary and the fees of an outside law firm most likely would have increased the expenses to the receivership. Moreover, the record indicates that the parties knew that Miller would be rendering legal services to the receivership. The receiver used his own staff to reconstruct the financial status of the companies rather than hiring a separate accounting firm. The receiver did not seek compensation for any of the time spent by his staff to do this work, which included work by the firm's paralegal. Nor did Miller ask for fees or compensation as the receiver of the Automax entities.
Miller's services clearly benefited the receivership and generated funds for distribution to the creditors. Considering the complexities of this matter and the factors of Rule 1.5(a), we cannot say that the attorney fees approved by the trial court were unreasonable. Because the trial court has much discretion in setting a reasonable attorney fee under the circumstances of a particular case, we cannot say, after a thorough review of the record, that the amount approved was an abuse of that discretion.
Lastly, Regions contends that the trial court erred in allowing the receiver to be compensated on an interim ex parte basis, without hearing or service upon creditors. Again, while this Court may question why the receiver did not provide notice to the creditors of Automax of his requests for interim compensation as the attorney for the receivership, there is nothing in the *598 receivership laws that provides that he must.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Regions Bank.
AFFIRMED.
FOIL, J., dissents and assigns reasons.
FOIL, J., Dissents.
I respectfully dissent.
I feel that the fees were excessive. I would remand to the trial court for a full hearing on the proper amount of the fees.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] LSA-R.S. 12:151 C provides:

The court may, ex parte, pending trial, (1) appoint a temporary receiver whose authority shall cease upon appointment of a receiver after trial or upon dismissal of the proceeding, (2) on the applicant furnishing security in the amount fixed by the court, enjoin the corporation and its directors, officers, agents and shareholders from disposing of its property or changing the status of its affairs to the injury of the applicant, and (3) stay proceedings by other persons against the corporation's property.
[3] Hereinafter, Automax refers collectively to Automax U.S.A., L.L.C., Automax U.S.A., Inc., and Golden Goose Acceptance, L.L.C., three interrelated entities that were determined by the trial court to constitute one single business enterprise.
[4] The eight applications for compensation requested compensation for professional services provided to the receivership from February 24, 2000 through August 31, 2001, and also included requests for reimbursement for costs and expenses totaling $2,884.48.
[5] The receiver filed a motion to dismiss the appeal asserting that it was not a final judgment and that plaintiff lacked standing to appeal. The motion to dismiss was denied and the appeal maintained by this Court on February 10, 2003.
[6] In the early case of Villere v. New Orleans Pure Milk Co., 48 So. 162, 171-72, 122 La. 717, 743 (1908), the supreme court stated:

It has never been the practice in this state in insolvency proceedings or proceedings under receiverships for the receiver to ask leave of the court to employ an attorney or to give its sanction to the employment of any particular person. The right to obtain the services of counsel and to select the counsel has always been recognized as matters of right.