McDonald, j.
12This is an appeal from a judgment awarding past due lease payments, maintenance fees and taxes, and attorney fees. The appellant asserts that the trial court erred in failing to grant him relief under the Servicemembers Civil Relief Act, 50 U.S.C.A. § 3901, et seq. (the SCRA).
FACTS AND PROCEDURAL HISTORY
On August 5, 2011, Heaux Jeaux’s, L.L.C. (Heaux Jeaux’s) entered into a commercial lease with MIE Properties-LA, L.L.C. (MIE Properties) for a suite in a building at 14241 Airline Highway to open a bar. Joe Carey signed the lease agreement for Heaux Jeaux’s. Joe Carey and Holly Carey were married at that time and were the co-owners of Heaux Jeaux’s.
The lease had a term of five years, starting on February 1, 2012 and ending on January 31, 2017. The yearly rent total was $33,000.00, subject to an annual rent increase, and payable in advance each *1277 month in the amount of $2,750.00, along with taxes and common area fees. Mr. Carey and Ms. Carey each signed in solido guarantees agreeing to unconditionally pay MIE Properties in accordance with the lease. The in solido guarantee provides in part that “the undersigned hereby makes himself or itself a party to the Lease and bind[s] himself or itself in solido with the Lessee”.
An amendment to the lease was entered into between Heaux Jeaux’s and MIE Properties on December 7, 2011, changing the commencement date of the lease to July 1, 2012. Mr. Carey was called to active duty by the Louisiana National Guard on February 7, 2013. Heaux Jeaux’s was not able to turn a profit, and on August 8, 2013, Ms. Carey turned over the keys to MIE Properties and vacated the premises.
On April 7, 2014, MIE Properties filed suit on the lease for $68,358.01, together with legal interest from date of demand, reasonable attorney fees, and 1.«¡costs, naming as defendants Heaux Jeaux’s, L.L.C., Joseph Carey, and Holly Carey. MIE Properties averred that the total amount of $68,358.01 included $44,201.50 in past due rental payments, $15,021.29 for late fees, and $9,039.36 for common area maintenance and taxes due.[1] MIE Properties maintained that it had retaken possession of the premises without terminating the lease and would attempt to lease the premises to another tenant; however, the tenants were liable for the additional monthly rent and related costs for each month that the premises remained vacant until the lease ended on June 30, 2017.
On May 28, 2014, Ms. Carey, individually and on behalf of Heaux Jeaux’s, filed a general denial asking for judgment in her favor and against MIE Properties in a sum to be determined at trial. On June 2, 2014, Mr. Carey submitted notice requesting termination of the lease under the SCRA by sliding a letter under the locked door of MIE Properties. Todd Pevey, Vice President of MIE Properties, acknowledged that he received the letter in June 2014. On June 10, 2014, Mr. Carey and Ms. Carey were divorced.
On June 12, 2014, Mr. Carey filed an answer generally denying the allegations of the suit, asserting that he had been on active military duty since February 7, 2013, and seeking relief under the SCRA.
A trial on the merits was held on September 8, 2016. Thereafter, the district court ruled in favor of MIE Properties and against Mr. Carey, Ms. Carey, and Heaux Jeaux’s in solido for $137,782.47 in damages, together with $21,500.00 in attorney fees, and all costs. The judgment was signed on March 14, 2016. Mr. Carey filed a devolutive appeal on May 6,2016.[2]
Mr. Carey makes the following assignments of error.
1. The trial court committed reversible error when it failed to find that the changing of the locks on the bar in August 2013 constituted an unlawful non-judicial constructive eviction Rnotice of Joseph Carey, a person protected by [the SCRA].
2. The trial court committed reversible error when it failed to find that the seizure and sale of the beer from Heaux Jeaux’s in August 2013 without either a valid court order or a valid waiver of SCRA rights having been obtained from Joseph Carey violated [the SCRA],
3. The trial court committed reversible error when it failed to find that the hand delivery of the June 2, 2014 *1278 lease termination notice to MIE from Joseph Carey (P. Ex. 24), the receipt of which was acknowledged by MIE’s agent, Todd Pevey, validly terminated the lease under the SCRA effective July 31, 2014, pursuant to [the SCRA].
4. The trial court committed reversible error when it awarded excessive damages to plaintiff; and
5. The trial court committed reversible error when it awarded excessive attorneys fees to plaintiff.
(Footnote omitted.)
ASSIGNMENT OF ERROR NO. 1
|fiIn this assignment of error, Mr. Carey asserts that the trial court committed reversible error when it failed to find that the changing of the locks at Heaux Jeaux’s in August 2013 constituted a constructive eviction as to him because he was protected by the SCRA.
Mr. Carey testified at trial that after his military deployment on February 7, 2013, he turned over all management of Heaux Jeaux’s to Ms. Carey.[3] Thus, when Ms. Carey voluntarily turned over the keys to the premises to MIE Properties and vacated the premises on August 8, 2013, she acted on behalf of both herself and Mr. Carey as the managing owner of the business.
Therefore, we find no error by the trial court in its determination that Mr. Carey was not unlawfully evicted from the premises by MIE Properties. This assignment of eiTor has no merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, Mr. Carey asserts that the trial court committed reversible error by failing to find an invalid seizure and sale of beer from Heaux Jeaux’s in August of 2013 without either a valid court order or a valid waiver of his SCRA rights.
As noted above, Ms. Carey decided to close down the business, and thereafter voluntarily surrendered the keys to the leased premises to MIE Properties and vacated the premises on August 8, 2013. Ms. Carey left behind inventory in the bar, including alcohol and beer. Mr. Pevey testified that as the beer had an expiration date, MIE Properties sold it and applied the proceeds, $360.00, to the amount due under the lease. As Ms. Carey was the managing owner of Heaux Jeaux’s with Mr. Carey’s consent, and voluntarily turned over the keys and vacated the premises, leaving the inventory behind, we find no error by the trial court in its determination that there was no invalid seizure and sale of the beer. This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 3
In this assignment of error, Mr. Carey asserts that the trial court committed reversible error when it failed to find that his hand delivery of the June 2, 2014 lease termination notice to MIE Properties, the receipt of which was acknowledged by Mr. Pevey, validly terminated the lease under the SCRA.
Mr. Carey delivered the termination of lease notice to MIE Properties on June 2, 2014, by sliding it under the door of MIE Properties, which was closed at that time. Mr. Pevey acknowledged at trial that he received the notice in June of 2014, although he could not remember which day he received it.
The SCRA provides in part at 50 U.S.C.A. § 3955:
(a) Termination by lessee
*1279 (1) In general
IfiThe lessee on a lease described in subsection (b) may, at the lessee’s option, terminate the lease at any time after—
(A) the lessee’s entry into military service; or
(B) the date of the lessee’s military orders described in paragraph (1)(B) or
(2)(B) of subsection (b), as the case may be.
⅜ jfc ⅜: sfc ⅝
(b) Covered leases
This section applies to the following leases:
(1) Leases of premises
A lease of premises occupied, or intended to be occupied, by a servicemember or a servicemember’s dependents for a residential, professional, business, agricultural, or similar purpose if—
(A) the lease is executed by or on behalf of a person who thereafter and during the term of the lease enters military service; or
(B) the servicemember, while in military service, executes the lease and thereafter receives military orders for a permanent change of station or to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 90 days.
* * ⅛ # #
(c) Manner of termination
(1) In general
Termination of a lease under subsection (a) is made—
(A) by delivery by the lessee of written notice of such termination, and a copy of the servicemember’s military orders, to the lessor (or the lessor’s grantee), or to the lessor’s agent (or the agent’s grantee); and
⅜ * * * *
(2) Delivery of notice
Delivery of notice under paragraph (1)(A) may be accomplished—
(A) by hand delivery;
(B) by private business carrier; or
(C) by placing the written notice in an envelope with sufficient postage and with return receipt requested, and addressed as designated |7by the lessor (or the lessor’s grantee) or to the lessor’s agent (or the agent’s grantee), and depositing the written notice in the United States mails.
(d) Effective date of lease termination
(1) Lease of premises
In the case of a lease described in subsection (b)(1) that provides for monthly payment of rent, termination of the lease under subsection (a) is effective 30 days after the first date on which the next rental payment is due and payable after the date on which the notice under subsection (c) is delivered. In the case of any other lease described in subsection (b)(1), termination of the lease under subsection (a) is effective on the last day of the month following the month in which the notice is delivered.
⅜⅜⅜⅜⅜
(e) Arrearages and other obligations and liabilities
(1) Leases of premises
Rent amounts for a lease described in subsection (b)(1) that are unpaid for the period preceding the effective date of the lease termination shall be paid on a prorated basis. The lessor may not impose an early termination charge, but any taxes, summonses, or other obligations and liabilities of the lessee in accordance with the terms of the lease, including reasonable charges to the lessee for excess wear, that are due and unpaid at the time of termination of the lease shall be paid by the lessee.
⅜ ⅜ ⅜ ⅝ sfc
(i) Definitions
(1) Military orders
*1280 The terra “military orders”, with respect to a servicemember, means official military orders, or any notification, cei’-tification, or verification from the ser-vicemember’s commanding officer, with respect to the servicemember’s current or future military duty status.
(2) ConUS
The term “continental United States” means the 48 contiguous States and the District of Columbia.
The method provided for termination of a lease under the SCRA is permissive. It provides that termination “may” be accomplished by hand delivery, private business carrier, or by U.S. mail with return receipt requested. The |8permissive use of “may” rather than “shall” or “must” indicates that other methods may be used. As Mr. Pevey verified that he received the termination notice in June 2014, we find that the delivery system used by Mr. Carey was sufficient notice of termination. Thus, the termination was effective “on the last day of the month following the month in which the notice is delivered.” Notice was delivered and received by MIE Properties in June of 2014, so the termination was effective on July 31, 2014.
Therefore, we find that the trial court committed legal error when it failed to find that Mr. Care/s hand delivery of the June 2, 2014 lease termination notice to MIE Properties, the receipt of which was acknowledged by Mr. Pevey, validly terminated the lease as to Mr. Carey under the SCRA, effective July 31, 2014. This assignment of eiTor has merit.
ASSIGNMENT OF ERROR NO. 4
In this assignment of error, Mr. Carey asserts that the trial court erred in awarding excessive damages to MIE Properties. First, Mr. Carey maintains, and we have found, that the delivery and receipt of the June 2, 2014 termination letter constituted termination of the lease as to Mr. Carey on July 31, 2014. Further, Mr. Carey maintains that he and Ms. Carey entered into an oral agreement with MIE Properties during the course of the lease to reduce the rent from $2,750.00 to $1,500.00 per month.
Mr. Pevey testified at trial that Heaux Jeaux’s had trouble making the lease payments from the beginning of the lease period, so MIE Properties entered into an oral agreement with Mr. Carey and Ms. Carey to allow them to pay a temporary reduced rent payment of $1500.00 per month, with the remainder of the rent payment deferred to a later time. He noted that any permanent reduction in rent would have had to have been put in writing, pursuant to the terms of the lease.
Bo Diez, the leasing and marketing director for MIE Properties at the)irrelevant time period, likewise testified that the reduction of rent from $2,750.00 to $1,500.00 per month was a temporary deferral of rent that would be paid later, in an attempt to “work with” Heaux Jeaux’s to let them “catch up” and get back on their feet. The notices of payments due sent from MIE Properties to Heaux Jeaux’s also reflected that the reduced rental payments were only providing a temporary deferral of the remainder of the rent owed. By contrast, Mr. Carey testified at trial that the reduction of rent to $1,500.00 per month was not a deferral of the balance, but rather a renegotiated rental payment.
Based on the totality of the evidence, including the lease requirement that any change to the lease be put into writing, we cannot say that the trial court erred in finding that the $1,500.00 lease payments were a temporary deferral of the remainder owed on the lease, rather than a permanent reduction of the lease payments. However, as we have found that Mr. Carey’s termination of the lease under the SCRA was effective as to him on July 31, *1281 2014, we find that the trial court erred in holding Mr. Carey liable for lease payments, common area maintenance fees, management fees and late fees past July 31, 2014. This assignment of error has merit.
Mr. Carey also maintains that the trial court erred in accepting MIE Properties’ accounting of late charges, which he avers are overstated by $12,503.50. He maintains that the late fee should only be based on the monthly amount due for rent, common area fees, and management fees, and not the accrued balance owed. MIE Properties maintains that this issue was not raised at the trial court, and thus, cannot be raised on appeal. However, we note that in his answer to the petition for damages, Mr. Carey denied all allegations in the petition. Further, at trial Mr. Carey did not agree that the amounts shown as due in the statements were in fact correctly calculated. He testified that the parties had renegotiated the lease to $1,500.00 per month.
11flThe lease provides that:
If Tenant shall fail to pay when due, the said Annual Rent, Additional Rent or any other sum required by the terms of this Lease to be paid by Tenant, then, upon the happening of any such event, and in addition to any and all other remedies that may thereby accrue to Landlord, Tenant agrees to pay to Landlord a late charge of five percent (5%) of the monthly account balance. The late charge on the base rent accrues after ten (10) days of the due date and said late charges shall be collectible as Additional Rent.
The language of the lease specifically provides that the late charge is 5 percent of the “monthly account balance”, and that the late charge on the “base rent” accrues after 10 days of the due date. It does not provide that the late charge is 5 percent of the accrued balance.
In ease of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. C.C. art. 2056. See Crum v. Crum, 330 So.2d 925 (La. App. 1 Cir. 1976). Herein, we find that the contract is ambiguous, and thus must be interpreted against MIE Properties. We find that the trial court erred in finding Mr. Carey liable for 5 percent interest on the accrued balance.
The amount of base rent due for December 2012[4] through June 2013 is rent of $2,750.00 per month, with common area maintenance fees of 423.33 per month, management fees of $137.50 per month, and a 5 percent late fee of $165.54 per month, for a total of $3,476.37 per month. For seven months, this amounts to $24,334.59.
With a 3 percent increase in base rent and management fees per annum, for July 2013 through June 2014 the base rent due is $2,832.50, with common area maintenance fees of $423.33, management fees of $141.63, and a 5 percent late fee of $169.87, for a total of $3,567.33. For 12 months, this amounts to $42,807.96.
In With the next 3 percent increase in base rent and management fees per an-num, for July 2014 (the last month of the lease), the base rent due is $2,917.48, plus common area maintenance fees of $423.33, management fees of $145.87, and a 5 per *1282 cent late fee of $174.33, for a total of $3,661.01.
We add the amounts of $24,334.59, $42,807.96, and $3,661.01 for a grand total of $70,803.56 due by Mr. Carey on the lease. Thus, we amend the award of damages due by Mr. Carey on the lease to MIE Properties from $137,782.47 to $70,803.56.
ASSIGNMENT OF ERROR NO. 5
In this assignment of error, Mr. Carey asserts that the trial court committed reversible error in awarding excessive attorney fees to MIE Properties. There was no evidence in the record regarding attorney fees, and the tidal court did not give any reasons for its attorney fees award in the amount of $21,500.00. The lease agreement provides for attorney fees in the amount of 10 percent of the amount claimed, and also provides that in the event of a successful legal action to enforce the terms of the lease, the losing party agreed to pay all reasonable expenses to the prevailing party, including attorney fees.
The trial court has much discretion in fixing an award of attorney fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. An attorney fee must be “reasonable.” The amount is regulated by the Rules of Professional Conduct. Regions Bank v. Automax USA, L.L.C., 2002-1755 (La.App. 1 Cir. 6/27/03), 858 So.2d 593, 595-96, writ denied, 2003-2131 (La. 11/7/03), 857 So.2d 503.
Rule 1.5(a) of the Rules of Professional Conduct provides the following factors to determine an attorney fee:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
|,¾(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
8) whether the fee is fixed or contingent.
We find that, after consideration of the factors used in determining a reasonable attorney fee, and considering the lease agreement provision for a 10 percent attorney fee, the trial court erred in its award of attorney fees in the amount of $21,500.00, which we find excessive under the circumstances of this relatively simple case. We find that 10 percent of the amended damage award, $7,080.36, is a reasonable attorney fee in this case.
CONCLUSION
For the foregoing reasons, the trial court judgment, awarding $137,782.47 in damages to MIE Properties, against Mr. Carey, Ms. Carey, and Heaux Jeaux’s, in solido, is amended as to Mr. Carey, and the award against Mr. Carey is amended to $70,080.36. The award of $21,500.00 in attorney fees to MIE Properties against Mr. Carey, Ms. Carey, and Heaux Jeaux’s, in solido, is amended as to Mr. Carey, and the attorney fees award against Mr. Carey is amended to $7,080.36. As amended, the trial court judgment is affirmed. Costs of this appeal are assessed against MIE Properties.
*1283 AMENDED, AND AS AMENDED, AFFIRMED.

. We note that the amounts listed total $68,262.15, rather than $68,358.01.

. Ms. Carey did not appear at trial and did not appeal the judgment.

. Mr. Carey also testified that in April of 2013 Ms. Carey obtained a restraining order against him that provided that he was not allowed to go "near Heaux Jeaux’s”.

. Mr. Pevey testified at trial after all payments were credited, Heaux Jeaux’s was paid up on the lease through December 1, 2012.