Judgment rendered November18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,573-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

FRANK MILLER, ET AL                     Plaintiffs-Appellees
(JONATHAN MILLER-
DECEASED)

versus

RAYVILLE MANUFACTURING          Defendant-Appellant

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Ouachita, Louisiana
Trial Court No. 1804075

Brenza I. Jones
Workers' Compensation Judge

* * * * *

JOE D. GUERRIERO                        Counsel for Appellant


JAMES M. WILKERSON                 Counsel for Appellees
RICHARD L. FEWELL, JR.

* * * * *

Before MOORE, STONE, and THOMPSON, JJ.

**THOMPSON, J.**

In this Workers' Compensation case arising from District 1-E in Ouachita Parish, the Honorable Brenza Irving Jones presiding, the defendant, Rayville Manufacturing, appeals the ruling that Jonathan Miller's injuries were caused by a work-related accident, and awarding $75,000 in death benefits, $123,722.38 in medical expenses, a $2,000 penalty, and $25,000 in attorney fees. For the following reasons, we affirm the assessment of attorney fees, vacate the amount of the award of attorney fees, and remand this matter to the WCJ for the taking evidence on the issue of the appropriate amount of attorney fees and for the issuance of written reasons for the judgment on that issue, and for the rendering of a new judgment on that issue. In all other respects, we affirm the judgment.

## FACTS & PROCEDURAL HISTORY

On March 31, 2018, Jonathan Miller ("Miller"), employed by Rayville Manufacturing ("Rayville") as part of a work-release program, was mowing the lawn of the Hakim family in Monroe, Louisiana. The lawn included a steep slope as it approached the bank of Bayou Desiard. During the course of his mowing, Miller and the lawn mower went into Bayou Desiard, where the mower flipped over and pinned him underwater. He was treated at the scene and transported to the hospital but succumbed to his injuries two days later at University Health in Shreveport. His cause of death was ruled to be drowning complicated by traumatic compression of the chest.

On June 8, 2018, Miller's parents, Frank and Marilyn Miller, filed a workers' compensation claim against Rayville on behalf of Miller's two daughters. The claim sought death benefits for the children due to Miller's death being the result a work-related injury. The claim also sought payment

of medical and funeral expenses, penalties, and attorney fees for Rayville's failure to timely pay benefits.

On July 25, 2019, the Worker's Compensation Judge ("WCJ") ruled in favor of claimants, and Rayville was ordered to pay $75,000 in death benefits to Miller's daughters, medical expenses in the amount of $123,772.38, a $2,000 penalty, and $25,000 in attorney fees. Rayville now appeals that ruling.

## STANDARD OF REVIEW

Factual findings and judgments in workers' compensation cases are subject to the manifest error standard of review. *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 15-2137 (La. 06/29/16), 194 So. 3d 1112. Under this standard, the reviewing court does not decide whether the WCJ was right or wrong, but only whether the WCJ's findings are reasonable. *Buxton v. Iowa Police Dep't*, 09-0520 (La. 10/20/09), 23 So. 3d 275.

## DISCUSSION

Rayville asserts ten (10) assignments of error, some of which are duplicative in nature, and while keeping the numerical order set forth by Rayville, we discuss them below.

**Assignment of Error Number 1: The trial court did not apply the jurisprudence requiring Plaintiffs to carry the burden of proof in reaching its decision.**

An employee is entitled to workers' compensation benefits for a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A); *Iberia Medical Center v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421; *Buxton, supra*. The claimant in a workers' compensation case has the burden of establishing his disability

and its causal connection with the work-related accident by a preponderance of the evidence. *Buxton, supra*; *Bradley v. St. Francis Medical Ctr.*, 51,572 (La. App. 2 Cir. 09/27/17), 244 So. 3d 722. The burden is met when the evidence, taken as a whole, shows that it is more probable than not that the work-related accident somehow caused or contributed to the disability; it is not necessary that the exact cause be found. *Bradley, supra; Modicue v. Graphic Packaging*, 44,049 (La. App. 2 Cir. 02/25/09), 4 So. 3d 968.

An accident is an "unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1); *Iberia Medical Ctr. v. Ward, supra*. The requirement of a work-related accident has consistently been interpreted liberally by the courts. *Iberia Medical Ctr. v. Ward, supra,* and citations therein.

As to the occurrence of an accident in this case, it is undisputed that Miller, and the lawn mower that he was operating, went into Bayou Desiard and this event caused Miller fatal injuries. The testimony of N. Edward Hakim ("Hakim"), manager of Rayville Manufacturing, established that Miller had been mowing that particular lot consistently over 9 months and that he knew him well and interacted with him at least every other day. Additionally, Hakim testified that Miller's instructions were to begin mowing at the bottom of the hill, going left to right, working his way to the top so that he would never be mowing in a downhill direction.

Witness Isabel Chauvin ("Chauvin"), a student at the University of Louisiana at Monroe, stated that she witnessed Miller mowing the property

before the lawn mower went into the bayou. Additionally, she actually witnessed Miller and the lawn mower go into the bayou, and testified she saw skid marks from the lawn mower leading into the bayou.

Subsequent to the death of Miller, the Occupational Safety and Health Administration ("OSHA") investigated the accident and rendered a report. The admission into evidence of that report at the trial of this matter is the subject of a separate assignment of error and will be addressed in greater detail below. As it relates to the first assignment of error, Rayville contends that the WCJ relied solely on that OSHA report and its findings in rendering her decision. The WCJ related the following in her oral reasons for ruling:

> A review of photographs submitted into evidence paints a picture whereby Jonathan Miller followed the instruction of Employer by driving to the bottom of the slope closest to the bayou. Skid marks appear at the end of the lawn and at the beginning of the concrete wall edging the embankment as noted on Exhibit P1-C. Those skid marks are indicators of [Miller's] efforts to prevent his tumble over the five-foot embankment and into the bayou.
> Based upon the actual facts of this case as clearly indicated by the unrefuted evidence presented, Decedent died as a result of drowning complicated by traumatic compression of the chest. The accident causing his death was due to his required use of a lawn mower on an incline greater than 15 degrees. This Court finds that Decedent was killed in an accident while working in the course and scope of his employment with Defendant, and therefore his death was causally related to his work accident. To find otherwise, this Court would have to rely on the abundance of speculation found within Defendant's presentation of his case.

It is clear from the WCJ's detailed oral reasons for ruling that she considered many details and facts in evidence other than the OSHA report in making her findings. Although the WCJ did address the OSHA citations in her oral reasons for ruling, the citations were not the only reasons cited. In addition to the OSHA citations, the WCJ considered medical evidence and

4

reports, testimony of Dr. Jennifer Forsythe, and photographs of the scene of the accident in evidence.

Taking the evidence as a whole into account, it is reasonable to find that it was more probable than not that Miller's injuries were caused by a work-related accident. Miller's job was to mow the lawn on a zero-turn riding lawn mower. While performing that job, the mower he was riding went into Bayou Desiard, pinned him underneath, and caused his injuries and ultimate death. There was no evidence presented at trial to refute that Miller was, in fact, on the riding lawn mower at the time it fell into the bayou or that Miller was doing anything other than performing his duties of mowing the lawn as instructed. Therefore, we cannot say that the WCJ was manifestly erroneous in finding that claimants carried their burden of proof.

**Assignment of Error Number 2:  The trial court based its decision on findings by an OSHA report which was erroneously introduced into evidence over the objections of the Defendant who did not get the opportunity to cross-examine the alleged preparer of said report and thus the report was rank hearsay.**

To a great extent, in Workers' Compensation suits, strict rules of evidence and procedure are done away with, but all findings of fact must be based on competent evidence. La. R.S. 23:1317(A); *G.N.B., Inc. v. Jones*, 29,779 (La. App. 2 Cir. 08/20/97), 699 So. 2d 466; *Brooks v. Smith*, 35 So. 2d 613 (La. App. 2 Cir. 1948).

In this case, we must first decide whether this hearsay evidence (the OSHA citations) can qualify as competent evidence. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). The traditional exclusion of hearsay evidence is based upon concerns of unreliability that arise from the inability to test the

5

veracity of the out-of-court declarant. *State v. Arnold*, 367 So.2d 324, 326 (La.1979). However, as was noted by an administrative law scholar:

> [T]he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to the most reliable. Therefore[,] the guide should be a judgment about the reliability of particular evidence in a particular circumstance, not the technical hearsay rule with all of its complex exceptions.

Kenneth Davis, *Hearsay in Administrative Proceedings*, 32 Geo. Wash. L. Rev. 689, 689 (1964). In *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 03/04/98), 708 So. 2d 375, 382, the Louisiana Supreme Court held:

> To give effect to the more relaxed evidentiary standards in [La. R.S.] 23:1317, we hold that the hearing officer has the discretion to admit hearsay evidence in worker's compensation proceedings. We further hold that such evidence can qualify as "competent evidence," provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. This determination must be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard.

In the instant case, claimants sought to introduce into evidence two citations issued to Rayville by OSHA. Rayville objected to their introduction, arguing the citations were hearsay and not admissible since Rayville would be unable to cross-examine the preparer of the citations. We agree that the information contained in the OSHA citations is hearsay. However, the information contained in the citations was corroborated by testimony from both Hakim and Chauvin and can therefore be considered reliable. Both witnesses testified that Miller was mowing on a zero-turn mower and that he was mowing on an incline. Considering the relaxed evidentiary standards in workers compensation cases and the corroboration of the information contained in the citations from independent witnesses, it

6

cannot be concluded that the WCJ was manifestly erroneous in admitting the OSHA reports into evidence. This assignment of error lacks merit.

**Assignment of Error Number 3: The trial court erroneously based her decision not only on the objected to OSHA report, but also on Mr. Miller mowing the incline, which is contrary to all of the evidence.**

**and**

**Assignment of Error Number 6: The trial court found that Mr. Miller had been or was mowing the "slope" at the time the mower started down the incline when in fact all pictures show clearly that was not so as the mower's blade was not engaged and the grass showed not one inch of mowing on the incline as reflected clearly in D-1 and P-A.**

Similar to Assignment of Error Number 1, Rayville argues that the WCJ erroneously based her decision on Miller mowing on an incline. This Court must assume that Rayville meant to assert that the WCJ based her decision on the assumption that the mower blade on the lawn mower was actually engaged at the time of the accident. It appears from the record that the fact that the mower blade was **not** engaged at the time of the accident is not in dispute between the parties. Riding a lawn mower and maneuvering it does not require the constant engagement of the blades or that they be turning at all times. There are understandable instances when, during the course of preparing for and mowing a lawn, the blades would not be engaged. Such instances include, but are not limited to, loading and unloading the mower, driving over areas not intended to be cut or which may cause damage if the blades were engaged, and positioning the mower for a particular path or to avoid discharging the cuttings in or toward a certain area or direction.

In her oral reasons for ruling, the WCJ stated that the accident causing Miller's death was due to his required use of a lawn mower on an incline greater than 15 degrees. Considering the WCJ's own words, we cannot say

7

that she based her decision on Miller mowing the incline, but rather on his use of the lawn mower on an incline which caused his injuries and ultimate death. Therefore, these assignments of error lack merit.

**Assignment of Error Number 4:** **The trial court disregarded the unchallenged evidence that the lawnmower in question would come to a stop if just one of the handles was not being used, i.e., if one arm had lifted off of one of the handles, it would have stopped before going into the bayou.**

**and**

**Assignment of Error Number 7:** **The trial court found that there were "skid marks" which allegedly show that Mr. Miller was trying to stop but the mower stops if the driver lifts just one hand off just one of the mower's handles.**

Rayville essentially asserts in its fourth and seventh assignments of error that the trial court incorrectly determined that the lawn mower would not have immediately stopped upon Miller's hands being taken off the handles. Rather, Rayville asserts that the WCJ determined that the lawn mower would have slid a distance in wet grass upon Miller's hands being taken off the handles, causing him and the mower to fall into Bayou Desiard.

When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own inferences and evaluations are as reasonable. *Rosell v. ESCO,* 549 So. 2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880 (La. 1993).

At trial, David Moses ("Moses"), a supervisor for Rayville, testified as to the manner in which the lawn mower operated. According to Moses'

8

testimony, in order to operate the lawn mower, one must sit in the seat, pull the handles inward, and then either push the handles away to go forward or pull them into reverse. Additionally, in order to turn, one would push only one handle forward corresponding to the desired turning direction. When asked what would happen if one were to remove their hands from the handles while the motor is running, Moses replied that the mower would come to a slow stop. The basic laws of physics dictate that a sizable riding mower, with the added weight of an adult operator, traveling downhill, would have certain inertia that would affect the rate at which it would slow to a stop.

In its brief, Rayville asserts that had Miller simply removed his hands from the lawn mower handles, the lawn mower would have immediately stopped and not gone into the bayou. The record indicates that there were skid marks in the grass that correspond with Miller's path into the bayou. It is reasonable to find that Miller did, in fact, at least pull back on the handles in an attempt to prevent the lawn mower from plunging into the bayou. Human error, panic, or an unfortunate reaction to a situation by an employee does not relieve the employer from liability for injuries received by an employee injured while performing their duties. Therefore, the WCJ's finding that Miller attempted to stop before falling into the bayou was reasonable and will not be disturbed. These assignments of error lack merit.

**Assignment of Error Number 5: The trial court failed to recognize a highly qualified EMT to give any opinions as an expert relating to what is a cardiac arrest, the difference between a cardiac arrest and a heart attack, or how a cardiac arrest can only show up on an EKG if it is occurring while the cardiac arrest is happening during the administration of an EKG, and, it would not appear on the EKG after the cardiac arrest was over, just like it would not show up on an autopsy as Dr. Forsyth testified.**

9

An expert must be qualified before the court will consider whether the expert's opinion is admissible. A witness is qualified as an expert by the witness' knowledge, skill, experience, training, or education. La. C.E. art. 702. Broad discretion should be accorded the trial judge in his or her determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. *State v. Berry,* 95-1610 (La. App. 1 Cir. 11/08/96), 684 So. 2d 439, *writ denied*, 97-0278 (La. 10/10/97), 703 So. 2d 603. To determine whether a witness is an "expert," the court is guided by two primary concerns: (1) whether the witness plans to testify to actual technical knowledge; and (2) whether such knowledge will assist trier of fact in understanding or determining fact in issue. *Barrett v. T.L. James & Co.*, 28,170 (La. App. 2 Cir. 04/03/96), 671 So. 2d 1186, *writ denied*, 96-1124 (La. 06/07/96), 674 So. 2d 973.

In the instant case, Rayville sought to have Nicholas Sosso ("Sosso"), an emergency medical technician who arrived on the scene after Miller's accident, qualified as an expert witness to testify about the distinction between cardiac arrest and a heart attack, and whether Miller experienced either at the time of the accident. The WCJ declined to recognize Sosso as an expert in the area of cardiac events but allowed him to testify as to the difference between cardiac arrest and a heart attack and with regard to his treatment of Miller. Sosso was not allowed to testify as to what would or would not show up on an EKG and why, considering his level and nature of medical training and experience.

One of Rayville's theories was that Miller either had a heart attack or experienced cardiac arrest and this is what caused him to drive into the bayou. Rayville hoped to ultimately establish, through Sosso, that Miller's

injuries were not caused by a work-related accident, but, rather, by a heart attack, thus leading to the Workers' Compensation claim being denied. The WCJ allowed Sosso to testify with regard to the tests he performed on Miller. Sosso performed a 4-lead EKG on Miller, and it did not show that Miller was experiencing a cardiac event.

Given the broad discretion of the WCJ in recognizing witnesses as experts, we do not find that the WCJ erred in failing to qualify Sosso as an expert for the purposes sought by Rayville. This assignment of error lacks merit.

**Assignment of Error Number 8: The trial court disregarded the testimony of the same totally impartial eye witness who stated unequivocally that Mr. Miller was slumped over the handles, made no sound, made no effort to stop or remove himself from the lawn mower, resulting in the obvious conclusion that Mr. Miller was unconscious as he proceeded down the straight incline.**

Rayville contends that the WCJ disregarded the testimony of Chauvin, the college student who was an eyewitness to the incident. Whether testimony is credible is a question of fact to be determined by the WCJ. *Harris v. Casino Magic*, 38,137 (La. App. 2 Cir. 01/28/04), 865 So. 2d 301, *writ denied*, 04-0502 (La. 04/08/04), 870 So. 2d 275.

Rayville elicited testimony from Chauvin that she saw Miller not in what she considered to be the typical riding position, but, instead, slightly leaned forward and slumped toward the outside of the lawnmower immediately prior to the accident. Rayville relies on this testimony to support its theory that Miller must have experienced a cardiac event prior to the accident, and thus, Miller's accident could not have been work related.

The conclusions Rayville suggested to the WCJ based on the testimony and conclusions of Chauvin were not supported by the medical

11

evidence. The opinion of the treating physician should be accorded greater weight than that of a physician who sees the patient only once or twice. *Miller v. Clout*, 03-0091 (La. 10/21/03), 857 So. 2d 458; *Bradley, supra*. While in this case Miller did not have a treating physician since his injuries resulted in his death, testimony was elicited from the physician who performed his autopsy. Dr. Jennifer Forsythe ("Dr. Forsythe"), the physician who performed Miller's autopsy, testified that a cardiac arrest would not show up on an autopsy. Being no medical evidence to suggest a cardiac arrest, she ruled Miller's cause of death to be drowning complicated by traumatic compression of the chest, directly related to his accident.

It is clear from the WCJ's oral reasons for ruling that she chose to afford greater weight to the testimony of a medical expert and the physician who performed Miller's autopsy regarding Miller's cause of death, rather than to the theory put forth by Rayville based on the testimony of Chauvin, who was not a medical expert. This is clearly within the purview of the WCJ and should not be disturbed on appeal. This assignment of error lacks merit.

**Assignment of Error Number 9: The trial court ignored the stipulation that the children of Mr. Miller were not being supported by the decedent Mr. Miller before his death and also ignored the sworn affidavit of one of the Plaintiffs (the children's Grandmother) in which she swore under oath stating that Mr. Miller had in fact supported the children.**

Rayville next asserts that the WCJ erred in awarding $75,000 in death benefits to Miller's two children, whom he did not support at the time of his accident and death. Under La. R.S. 23:1231(B)(3):

> If the employee leaves no dependents entitled to benefits under Paragraph (2) of this Subsection, one lump sum of seventy-five thousand dollars shall be paid to the surviving biological and adopted children of the employee to be divided equally among

12

them, which shall constitute the sole and exclusive compensation in such cases. If the employee leaves no legal dependents and no biological or adopted children entitled to benefits under any state or federal compensation system, the sum of seventy-five thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.

In this case, at the time of Miller's death, both of his children were living with their grandparents, and Miller only occasionally gave them money for entertainment.

In direct conflict with this assignment of error are the stipulations of the parties, before and after conclusion of the trial, that the children would be entitled to death benefits if the WCJ found a causal relation between Miller's death and the work-related accident. After the parties rested, the following exchange took place:

> THE COURT: This is the stipulation that I have at the beginning of these proceedings. This is the stipulation; I wrote it down: The children of Jonathan Miller will be entitled to death benefits if the Court finds a causal relationship between Claimant's death and the work-related accident.
>
> MR. WILKERSON: We're good with that.
>
> THE COURT: That's the stipulation that I have from the beginning of these proceedings.
>
> MR. FEWELL: That's—
>
> **MR. GUERRIERO: That's correct, Your Honor.**
>
> **THE COURT: Is that correct, Mr. Guerriero?**
>
> **MR. GUERRIERO: Yes. Yes, ma'am. It sure is.**

Not only would the children be entitled to the benefits award under subsection (B)(3) of La. R.S. 23:1231, but the parties clearly stipulated to that fact even after trial concluded. We cannot say that the WCJ erroneously

awarded death benefits in the amount of $75,000 to Miller's children. This assignment of error lacks merit.

**Assignment of Error Number 10:** **The trial court awarded attorney fees of $25,000 but gave no justification for that award only concluding it to be arbitrary and capricious because its defense was purely speculative; moreover, that the Judge did not give any reasons for the amount of attorney fees awarded or how any calculations were made in regard to same, and she also failed to give credit for the contractual attorney's fees owed to Plaintiff's attorney.**

Rayville next asserts that the WCJ arbitrarily awarded attorney fees in the amount of $25,000. Attorney fees and penalties awarded for failing to reasonably controvert a claim are statutory fees assessed against the employer or the insurer (or both). La. R.S. 23:1201 F; *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So. 2d 694. Statutory fees are not payable in every case of successful litigation but, rather, are payable only where the employer or insurer fails to pay benefits timely and fails, at trial, to show a reasonable controversy over the claim (or to show that nonpayment is the result of conditions over which the employer or insurer had no control). *Id.* An award of penalties and attorney fees in a workers' compensation case is subject to manifest error review. *Thomas v. Browning-Ferris Inc.*, 04-1584 (La. 02/25/05), 894 So. 2d 1091. The factors generally considered when fixing the amount of attorney fees to be awarded in workers' compensation cases are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case. *Langley v. Petro Star Corp. of La.*, 01-0198 (La. 06/29/01), 792 So. 2d 721.

In this case, the record is silent as to the WCJ's determination as to the skill involved or the amount of time counsel spent representing the claimant. This case began June 18, 2018, and concluded on October 2,

14

2019. During that timeframe, it appears from the record that discovery was completed, mediation was attempted, at least one hearing and one deposition were held, as well as a one-day trial. At oral argument before this Court, Rayville points out that no evidence was presented by claimants' counsel as to the number of hours worked on the case or the hourly rate. The record contains no supporting documents to support a determination of the amount of attorney fees and strongly suggests it may have been a contingency allocation of one-third (33%) of the award of $75,000 to the surviving children. Additionally, Rayville contends that its defense of the claim was not arbitrary, but it was a complex and unusual factual scenario.

Despite Rayville's attempt to show that Miller's accident and eventual death were caused by cardiac arrest or suicide, we find that the evidence offered to support this theory, consisting of the testimony of one lay witness, was not sufficient to reasonably controvert the claimants' compelling medical evidence, from Dr. Forsythe, that he died from drowning and traumatic compression of the chest, both arising from the work-related accident. On this record, the WCJ was not plainly wrong to find a violation of La. R.S. 23:1201 F.

Nevertheless, we are constrained to find that nothing in the record supports the WCJ's assessment of $25,000 in attorney fees. Considering the amount of time and labor apparently involved, the amount of the claim, and the amount recovered for the claim, there could be facts which support a significant reasonable attorney fee award. *Turner v. Chicago Bridge & Iron Co.*, 52,167 (La. App. 2 Cir. 06/27/18), 251 So. 3d 615; *Dowles v. ConAgra Inc.*, 44,772 (La. App. 2 Cir. 10/28/09), 25 So. 3d 889; *Rachal v. Wal Mart*

*Corp.*, 2015-97 (La. App. 3 Cir. 06/03/15), 165 So. 3d 441. However, this record is devoid of any evidence or testimony to make such a determination.

The determination of the reasonableness of the award of attorney fees is always subject to the inherent power of the courts to regulate the practice of law. *Walker, Tooke & Lyons, L.L.P. v. Sapp*, 37,966 (La. App. 2 Cir. 12/10/03), 862 So. 2d 414, 417-18, *writ not cons.*, 04-0088 (La. 03/19/04), 869 So. 2d. 1140; *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 2000-0414 (La. 05/15/01), 788 So. 2d 1140; *City of Baton Rouge v. Stauffer Chem. Co.*, 500 So. 2d 397 (La. 1987). "The trial court has much discretion in fixing an award of attorney's fees, and its award shall not be modified on appeal absent a showing of an abuse of discretion.*" Regions Bank v. Automax USA, L.L.C.*, 2002-1755 (La. App. 1 Cir. 06/27/03), 858 So. 2d 593, *writ denied*, 2003-2131 (La. 11/07/03), 857 So. 2d 503. Here, the WCJ does not provide any reasons for the amount of the attorney fees award. Factors to be considered in determining whether attorney fees are excessive could include applying the factors in the La. Rule of Professional Conduct 1.5(a) and an expression by the WCJ of which factors she saw as important and the weight she assigned to those factors. This record does not include anything to suggest the amount of time claimants' counsel expended in the matter. There is no substantiation in the record of the amount of the award by the WCJ.

Considering the absence of factual findings to support the reasonableness of the attorney fees award by the WCJ, the absence of reasons for judgment relative to this issue, and the relative sparseness of this particular record on appeal, we are left with an inadequate factual basis upon which to assess the WCJ's award of the attorney fees.

16

Louisiana Code of Civil Procedure article 2164 provides that an "appellate court shall render any judgment which is just, legal, and proper upon the record of appeal." Under that article, the Louisiana Supreme Court has explained that an appellate court may remand a matter to the trial court to permit that court to take additional evidence where necessary to reach a just decision and prevent a miscarriage of justice. *Whitney Bank v. NOGG, L.L.C.*, 2015-1399 (La. App. 1 Cir. 06/03/16), 194 So. 3d 819, 825. Procedurally, remand is appropriate here because the record lacks the evidence that would allow us to resolve whether the WCJ erred in the amount of the award of reasonable attorney fees under these particular facts and circumstances. Therefore, we affirm the WCJ's award of attorney fees to Miller; we vacate the amount of the award of attorney fees; and we remand this matter to the WCJ for the taking of evidence on the issue of the appropriate amount of attorney fees, for the issuing of written reasons for the judgment on that issue, and for the rendering of a new judgment on that issue.

We find no error with the imposition or amount of the $2,000 penalty.

**CONCLUSION**

Considering the foregoing, the judgment of the Office of Workers' Compensation finding the injury and subsequent death of Miller was work related is affirmed. Likewise, the assessment of $75,000 in death benefits, $123,722.38 in medical expenses, and a $2,000 penalty to Rayville Manufacturing is affirmed. The assessment of attorney fees is affirmed, we vacate the amount of the award of attorney fees, and we remand this matter to the WCJ for the taking evidence on the issue of the appropriate amount of

17

attorney fees, for the issuance of written reasons for the judgment on that

issue, and for the rendering of a new judgment on that issue.

Costs of this appeal are assessed to appellant, Rayville Manufacturing.

**JUDGMENT AFFIRMED IN PART, VACATED IN PART; REMANDED TO THE WORKERS' COMPENSATION COURT FOR FURTHER PROCEEDINGS.**