WILLIAMS, J.
|,In this workers’ compensation case, the employer, Ecolab, Inc., denied a portion of the claimant’s requested medical treat *493 ment. Subsequently, the medical director of the Worker’s Compensation Administration denied the claimant’s disputed request for medical treatment. Thereafter, the worker’s compensation judge (“WCJ”) reversed the decision of the medical director and ordered the employer to cover the cost of the recommended surgery. The WCJ also assessed penalties in the amount of $2,000 and attorney fees in the amount of $4,000. For the following reasons, we affirm the judgment of the WCJ and award the claimant additional attorney fees for work completed in connection with this appeal.
FACTS
On October 2, 2007, the claimant, Robert Friedman, injured his back during the course and scope of his employment with the defendant, Ecolab, Inc. Soon thereafter, he began receiving workers’ compensation indemnity benefits and medical treatment. Initially, the claimant was treated conservatively, by his primary physician, with muscle relaxants and pain medications. In February 2011, the claimant was referred to Dr. Vincent Forte, a pain specialist at Louisiana Pain Care. Dr. Forte continued the claimant’s medications.
Also in 2011, the claimant was referred to Dr. Jose Ferrer, an orthopedic surgeon. On April 25, 2011, the claimant underwent a lumbar interbody fusion at L4-5 and L5-Sl. According to the claimant, his symptoms worsened after the surgery. Nevertheless, he continued to follow |2up with Dr. Ferrer and Dr. Forte. In November 2012, a CT scan of the claimant’s lumbar spine revealed that the pedicle screw that had been inserted at the left SI level had loosened, and the screw at the right Si level had fractured. The claimant continued treatment with Dr. Forte.
Subsequently, the claimant was referred to Dr. Bernie McHugh, a neurosurgeon. On June 14, 2013, the claimant presented to Dr. McHugh, complaining of severe lower back pain. Dr. McHugh noted the results of the November 2012 CT scan. He also noted that the claimant had a “mild degenerative change at the L3/L4 level” and ordered additional studies.
On September 16, 2014, the claimant returned to Dr. McHugh. Again, Dr. McHugh noted that the claimant’s radio-logic studies from 2012 and 2013 had revealed that the screws and metal plates at the SI level had fractured and that the hardware had “loosened” on the opposite side. Dr. McHugh also noted as follows:
* * *
[The claimant] underwent a more recent discography which demonstrated a concordant pain syndrome at the level just adjacent to his construct at the L3/4 level. His studies are over a year old. I discussed with him undergoing a more recent CT myelogram of the lumbar spine with 3-dimensional reconstruction.
⅜ $ ⅜
Dr. McHugh ordered the lumbar myelo-gram, which revealed that the placement of the pedicle screws and bars “remained unchanged since September 30, 2013” and that the claimant had mild posterior hypertrophy “at L3-4 just above the surgical procedure.”
The claimant returned to Dr. McHugh on December 11, 2014. After ^examining the claimant and reviewing the radiologic tests, Dr. McHugh recommended that the claimant undergo “an anterior lumbar in-terbody fusion at the L3/L4, L4/L5, and L5/S1 area [thereby] providing anterior middle column support for his already preexisting posterior column as well as adding into the construct at the L3/L4 level.”
*494 Ecolab approved the surgery to repair/revise the failed interbody fusion at L5-S1. However, the request to extend the fusion to provide additional anterior support at the L3-4 level (per Dr. McHugh’s recommendation) was denied. The report generated by Broadspire, Eco-lab’s workers’ compensation insurer, provided:
⅜ ⅜ ⅜
The patient has previous posterior fusion with now [a] fracture of SI- screws. He has loosening of the hardware in the fracture at L5-S1. He has degeneration of the disc above as well. L4-L5 is ■fused posteriorly. ALIF appears to be warranted at L5-S1 because hardware is fractured at SI. However, no other levels are indicated. Clear pseudoar-throsis exists at L5-S1. There is no stenosis or instability at L3-L4 that warrants fusion at this time.' L4-L5 is currently fused. As such, a partial certification of ALIF at L5-S1 only is considered medically necessary.
* * *
On January 15, 2015, the claimant filed a disputed claim for medical treatment (Form 1009) with the medical director of the Office of Workers’ Compensation Administration. The medical director denied the request, stating as follows:
Decision: Denied.
• [T]here is not enough clinical information submitted for decision.
• No clinical record submitted documents a physical examination.

Rationale: Care covered by the medical treatment] schedule

All records submitted were reviewed. The documentation does not support the approval of the requested services .in review for compliance with the Medical Treatment Schedule.

Reason for Denial

• Criteria for the minimum documentation submission has not been met.
5⅜ 5⅜ *
(Emphasis in original).
In response to the medical director’s decision, the claimant filed a disputed claim for medical treatment with the Office of Workers’ Compensation. Following a hearing, the WCJ ordered as follows:
IT IS HEREBY ORDERED that Plaintiff ROBERT FRIEDMAN refile the 1009 requesting approval of his surgery, attaching thereto the previous evidence of physical examination and the Court finding this to be an emergency situation due to the extreme pain suffered by Plaintiff and his condition, the Court requests that the Medical Director review the new filing and issue a ruling.
On March 3, 2015, the medical director denied the resubmitted claim on the basis that the claim was untimely. Following a hearing, the WCJ overturned the medical director’s decision and ordered Ecolab to “provide and pay for the surgery recommended for Plaintiff by his treating neurosurgeon[.]” The WCJ also assessed penalties in the amount of $2,000 and attorney fees in the amount of $4,000.''
Ecolab appeals.
DISCUSSION
Ecolab contends the WCJ erred in ordering it to pay for the claimant’s surgery, as recommended by Dr. McHugh. It argues that the medical 15director denied, the request for treatment pursuant to the provisions set forth in LSA-R.S. 23:1203.1 and the claimant failed to meet his burden of proving, by clear and convincing evidence, that the denial of the request was not in accordance with the provisions of the statute.
*495 It is well settled that a workers’ compensation claimant may. recover costs of medical treatment that is reasonably necessary for the treatment of a medical condition caused by a work-related injury. LSA-R.S. 23:1203(A); Gilliam v. Brooks Heating & Air Conditioning, 49,161 (La.App.2d Cir. 7/16/14), 146 So.3d 734. Pursuant to the Louisiana Administrative Code, “medically necessary treátmént” includes services that are in accordance'with the medical treatment guidelines (“MTCí”) and are clinically appropriate and effective for the patient’s illness, injury or disease. 40 LA ADC Pt. I, § 2717(A); Gilliam, swpra. To be deemed “medically necessary,” a service must be consistent with the diagnosis and treatment of a condition or complaint, in accordance with the MTG, not solely for the convenience of the patient, family, hospital or physician, and furnished in the most appropriate and least intensive type of medical-care setting required by the patient’s condition. 40 LA ADC Pt. I, § 2717(C)(3); Sanchez v. Caesar’s Entertainment, Inc., 49,864 (La. App.2d Cir.6/24/15), 166 So.3d 1283; Gilliam, supra.
Prior to the 2009 enactment of LSA-R.S. 23:1203.1, the determination of what medical treatment was appropriate was entrusted first to the insurer. LSA-R.S. 23:1142. If a dispute arose regarding whether a particular treatment was reasonable and necessary, the WCJ' was tasked with |flresolving the dispute. The WCJ would review the cáse, using the preponderance of the evidence standard, to determine what treatment was medically necessary under the circumstances.
Currently, under ' R.S. 23:1203.1(1), the claimant’s initial burden on appeal before the medical director remains one of proof by a preponderance of the evidence. Church Mut. Ins. Co. v. Dardar, 2013-2351 (La.5/7/14), 145 So,3d 271; Gilliam, supra. However, a claimant seeking judicial review of a decision made by the medical director must prove the necessity of the sought-after medical treats ment by clear and convincing evidence. Id.[1]
*496 |7The “clear and convincing” standard in a workers’ compensation case, applicable to an appeal to the WCJ, is an intermediate standard falling somewhere between the preponderance of the evidence standard (applicable to civil cases) and the beyond a reasonable doubt standard (applicable to criminal cases). Gilliam, supra; Hollingsworth v. Steven Garr Logging, 47,884 (La.App.2d Cir.2/27/13), 110 So.3d 1219. Proving a matter by “clear and convincing” evidence requires a claimant to demonstrate that the existence of the disputed fact is “highly probable” or “much more probable” than its nonexistence. Id.
Factual findings of a WCJ are subject to the'manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 1996-2840 (La.7/1/97), 696 So.2d 551; Gilliam, supra. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State, Dep’t of Transp. & Dev., 617 So.2d 880 (La.1983); Gilliam, supra.
In the instant case, the medical director denied the claimant’s disputed request for medical treatment. Citing the provisions set forth in the [ 8MTG, specifically 40 LA ADC Pt. I, § 2715, the director concluded that the claimant had failed to submit sufficient documents to indicate that he had undergone a physical examination. Ecolab contends the medical director did not err in concluding that the claimant failed to submit the proper documentation. Conversely, the claimant argues that he submitted the proper documents prior to having the initial surgery. According to the claimant, the MTG guidelines do not require him to resubmit the same documents prior to undergoing a subsequent surgery to correct, repair and/or extend the initial surgery.
40 LA ADC Pt. I, § 2715 provides, in pertinent part:
[[Image here]]
C. Minimum Information for Request of Authorization
1. Initial Request for Authorization. The following criteria are the minimum submission by a health care provider requesting care beyond the statutory non-emergency medical care monetary limit of $750 and will accompany the LWC-WC-1010:
a. history provided to the level of the condition and as provided in the medical treatment schedule;
b. physical findings/clinical tests;
c. documented functional improvements from prior treatment, if applicable;
d. test/imaging results; and
e. treatment plan including services being requested along with the frequency and duration.
2, To make certain that the request for authorization meets the requirements of this Subsection, the health care provider *497 should review the medical treatment schedule for each area(s) of the body to obtain specific detailed information related to the specific services or diagnostic testing that is included in the request. Each IsSection of the medical treatment schedule contains specific recommendations for clinical evaluation, treatment and imaging/testing requirements. The medical treatment guidelines can be viewed on Louisiana’s Workforce Commission website[.]
3. Subsequent Request for Authorizations. After the initial request for authorization, subsequent requests for additional diagnostic testing or treatment does not require that the healthcare provider meet all of the initial minimum requirements listed above. Subsequent requests require only updates to the information of Subpara-graph l.a-e above. However such updates must demonstrate the patient’s current status to document the need for diagnostic testing or additional treatment. A brief history, changes in clinical findings such as orthopedic and neurological tests, and measurements of function with emphasis on the current, specific physical limitations will be important when seeking approval of future care. The general principles of the medical treatment schedule are:
a. the determination of the need to continue treatment is based on functional improvement; and
b. the patient’s ability (current capacity) to return to work is needed to assist in disability management.
(Emphasis added).
In the instant case, the request for authorization submitted to the medical director did not constitute an “initial request for authorization.” The claimant’s initial surgery was authorized by Ecolab, and performed by Dr. Ferrer, in 2011. At issue herein was a “subsequent request for authorization” to repair and/or extend the surgery which had previously been authorized. Therefore, under the specific provisions of the MTG, the claimant was not required to submit the specific information set forth in § 2715 Paragraph C, subpara-graph 1. He was only required to submit “updates to the information of Subpara-graph 1[.]”
hoAt the conclusion of the arguments on appeal, the WCJ stated:
⅜ ⅜ ⅜5
After a review of the medical evidence, this Court finds that the findings of the Medical Director are not in accordance with the provisions of Louisiana Revised Statute 23:1203.1. The criteria for minimum documentation was, in fact, met and this Court further notes that it is clearly supported by the observations of this Court.
* * *
We agree. A review of the record herein revealed that the claimant filed a disputed claim for medical treatment on January 16, 2015. Along with the claim, the claimant submitted his medical records from Dr. McHugh’s office and the radiologist’s report from the myelogram of the claimant’s lumbar spine. The medical records indicated that diagnostic tests performed in 2012 and 2013 revealed that the hardware inserted during the 2011 surgery had failed, and a surgery to repair the failed fusion was required. It is also undisputed that the claimant has undergone extensive conservative treatment since the surgery; however, that treatment had been ineffective. Additionally, Dr. McHugh’s physician note, dated September 16, 2014, stated that the claimant’s discography had revealed that he had “a concordant pain syndrome at the level just adjacent to his construct at the L3/L4 *498 level.” The CT myelogram, dated December 1, 2014, revealed that the claimant had “mild posterior element hypertrophy at L3-4 just above [the] surgical procedure.” As a result, Dr. McHugh recommended extending the fusion to provide “anterior middle column support for his already preexisting posterior column as well as adding into the construct at the L3/L4 level.”
| nAccordingly, after reviewing the record in its entirety, we find that the claimant has proven, by clear and convincing evidence, that the medical director’s decision was not in accordance with R.S. 23:1203.1. Thus, we find that the WCJ was not clearly wrong in ordering Ecolab to provide the surgery as recommended by Dr.' McHugh. This assignment lacks merit.
Ecolab also contends the WCJ erred in assessing penalties and attorney fees for the denial of medical treatment. It argues that it reasonably controverted the necessity of the claimant’s surgery; therefore, the plaintiff was not entitled to an award of penalties and attorney fees.
Failure to provide payment of benefits will result in a penalty and attorney fees “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” LSA-R.S. 23:1201(F)(2); McCarroll v. Airport Shuttle, Inc., 2000-1123 (La.11/28/00), 773 So.2d 694; J.P. Morgan Chase v. Louis, 44,309 (La.App.2d Cir.5/13/09), 12 So.3d 440. The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees and his or her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Massey v. Fresenius Med. Care Holding, 49,407 (La.App.2d Cir.11/19/14), 152 So.3d 1019, writ denied, 2014-2650 (La.3/6/15), 160 So.3d 1290.
In awarding penalties and attorney fees, the WCJ stated:
⅜ ⅜ ⅜
I’m persuaded that the findings, the notations of conservative treatment and particularly the findings as a result of diskography [sic] supports a finding that ■the Indecision of Broadspire was arbitrary and capricious, and because of that, I’m going to award penalties and attorney fees in this matter.
⅝ ⅜ ⅜
We' agree. As stated above, the claimant underwent the lumber interbody fusion in 2011. In 2012 and 2013, radiological studies revealed that the fusion had failed. The discogram, completed in 2012, indicated that the claimant had an issue at the L3-4 level. Dr. McHugh, the claimant’s treating neurosurgeon, noted that the claimant had “a concordant pain syndrome at the level just adjacent to his construct at the L3/4 levels.” After obtaining additional studies, Dr. McHugh recommended that the claimant undergo “an anterior lumbar interbody fusion at the L3/L4, L4/ L5, and L5/S1 area providing anterior middle column support for his already preexisting posterior column as well as adding into the. construct at the L3/L4 level.” Despite the medical evidence and Dr. McHugh’s recommendation, Ecolab denied the request for the procedure, which would provide additional support and relieve some of the pain to' the claimant’s lumbar area.
Based on the evidence presented, we find no error in the WCJ’s determination that Ecolab lacked sufficient factual and medical information to reasonably controvert the claimant’s request. Therefore, we find that the penalties and attorney fees were appropriately awai’ded. This assignment is without merit.

Answer to Appeal

By answer to this appeal, the claimant seeks additional .attorney fees, in *499 the amount of $3,000, for work performed in connection with this appeal. 1is within the appellate court’s discretion to award or increase attorney fees for defending an appeal. Wilks v. Ramsey Auto Brokers, Inc,, 48,738 (La.App.2d Cir.1/15/14), 132 So.3d 1009; Nesbitt v. Nesbitt, 46,514 (La.App.2d Cir.9/21/11), 79 So.3d 347, writ denied, 2011-2301 (La.12/2/11), 76 So.3d 1178. The skill exercised by the attorney and the time and work done on the appeal are among the factors considered in determining the amount of the award for attorney fees. Id.; see also Code of- Professional Conduct, Rule 1.5(a).[2]
Considering our affirmation of the WCJ’s judgment with regard to thé medical necessity of the surgery, we find that an additional award, in the amount of $3,000, as requested by the claimant, is appropriate to compensate counsel for work performed in connection with this appeal.
CONCLUSION
For the reasons set forth herein, the judgment of the WCJ is affirmed. We also award additional attorney fees to the claimant, in the amount of $3,000, for the time and legal work done in connection with this appeal. Costs of this appeal are assessed to appellant, Ecolab, Inc.
AFFIRMED.

. With regard to the procedure for pursuing a claim under the new law, LSA-R.S. 23:1203.1 provides, in relevant part:
[[Image here]]
I, After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care; services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it js demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. .If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with- the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section,, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical.director on a form promulgated by the director. The medical director shall render a decision as soon as is practi *496 cable, but in no event, not more than thirty calendar days from the date of filing.
* ⅜ #
K. After the issuance of the decision by the medical director of the office, any party who disagrees with the decision, may then appeal by filing a "Disputed Claim for Compensation,” which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.
* ⅜ *

. Factors include: (1) the time andiabor required, the novelty or difficulty- of the issues and the skill required to properly perform the legal services; (2) the likelihood, if apparent to the client, that thé matter will preclude other employment; (3) the fee customarily charged in the locality for similar services;, (4) the amount involved and the results -obtained; (5) the time limitations imposed by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7)' the experience, reputation, and ability of the lawyer; and (8) whether the fee is fixed or contingent.