DREW, J.
hln this workers’ compensation proceeding, the employer and its insurer appeal the award of attorney fees and the assessment of a penalty for its failure to approve a lumbar spine MRI recommended by the claimant’s physician. The claimant has answered the appeal, contending that the attorney fee awarded was abusively low, as well as to seek additional attorney fees for this appeal.
We amend the judgment to increase the attorney fee award to $7,500, and affirm *739 the judgment as amended. We also award an additional attorney fee of $2,500 to claimant for work on this appeal.
FACTS
Calvin Arrant, who was employed by Wayne Aeree PLS, Inc., as a surveyor, was injured on June 30, 2012, when his work vehicle was struck by an 18-wheeler. Arrant testified that when he told Wayne Aeree after the accident that his back was hurting, Aeree said they would discuss it when Arrant returned to work following the weekend. Aeree denied that Arrant complained of injury after the accident. Arrant further testified that upon returning to work on Monday, he told Aeree that he would like to see a doctor and have his back examined, but Aeree replied that he did not have his insurance information. Aeree testified that Arrant did not start complaining about his back until August 1, 2012, and even then, he did not ask to see a doctor.
Arrant met with attorney Philip Deal on August 2, 2012. Arrant told Deal that his condition had worsened as he continued to work. Arrant reported that his lower back was hurting, he was beginning to have shooting pain down the back of his legs into his feet, and he had tingling all the way [¡.down to his toes. Based on Deal’s experience handling personal injury cases, he felt that Arrant’s complaints indicated a lumbar disc injury, and that Arrant needed to see a doctor and undergo a lumbar MRI to determine if he was experiencing nerve damage. Deal contacted the office of orthopedic surgeon Dr. Douglas Brown, and an appointment was scheduled for August 16.
Deal instructed Arrant on August 2 to tell Aeree that he had scheduled an appointment with Dr. Brown because his back was getting worse and he needed medical treatment, and that he needed the name of Acree’s workers’ comp insurer. Because Deal, Arrant, and Dr. Brown’s office were unsuccessful in obtaining the name of Acree’s workers’ comp insurer, Deal had to provide a $600 check to Dr. Brown in order for Arrant to be examined as scheduled. Arrant received a couple of injections from Dr. Brown during the August 16 examination. Dr. Brown also recommended a lumbar MRI because he suspected that Arrant had a lumbar disc injury.
LWCC, Acree’s insurer, denied the request for the lumbar MRI. On September 17, 2012, the medical director of the Office of Workers’ Compensation (“OWC”) reviewed the request and also denied it. Dr. Brown continued to see Arrant, who underwent a few weeks of physical therapy. Dr. Brown again requested a lumbar MRI, which was again denied by LWCC. The OWC medical director denied the second request on October 18, 2012. Deal paid $800 for the MRI to be performed because he remained concerned about possible nerve damage.
On May 1, 2013, Arrant filed a Form 1008 asserting that Aeree and LWCC had refused to provide a lumbar MRI and a left SI nerve block recommended by Dr. Brown. Arrant sought penalties and attorney fees. 1 Arrant filed two amended 1008s concerning his initial examination by Dr. Brown, the recommended MRI for which Deal had to pay $800, and examination by his neurosurgeon of choice, Dr. Bernie McHugh.
On July 2, 2013, LWCC and Aeree filed an answer asserting that Arrant did not need its approval to see Dr. Brown since he had the right to choose his treating physician without prior approval, that LWCC was not required to pay the $600 deposit for Dr. Brown, and it had paid for all of his authorized medical care.
*740 On January 9, 2014, the date for a hearing on pending matters in the case, Aeree and LWCC filed the exception of peremption, or alternatively, prescription. They contended that the disputed claim for compensation, filed on May 1, 2013, was untimely since under the Utilization Review Procedures, Arrant had 15 days from the date that the medical director mailed his determination to file his disputed claim for compensation. The WCJ referred the exception to the merits.
On April" 30, 2014, the WCJ rendered judgment that: (1) LWCC timely paid for the initial examination 'by Dr. Brown; (2) the exception of prescription was granted because Arrant failed to timely file his appeal of the medical director’s- decision affirming .LWCC’s denial of authorization for-the lumbar MRI; and (3) LWCC 'gave timely authorization for Arrant to be examined by Dr. McHugh. .
Arrant appealed. While his appeal was pending, Arrant died, and his wife and two children were substituted as claimants.
This court affirmed the judgment. Regarding whether Arrant’s filing of the 1008 to review the medical director’s determination was timely, this court determined that the WCJ did not err in applying the 15-day period set Lout by the OWC director in Title 40, Part I, Chapter 27, Section 2715(B)(3)(f) of the Louisiana Administrative Code. Arrant v. Wayne Acree PLS, Inc., 49,698 (La.App. 2 Cir. 4/15/15), 164 So.3d 321.
The supreme court reversed and vacated that part of the judgment granting the exception of prescription, finding that the director lacked the authority to promulgate a rule that shortened the prescriptive period for appealing the medical director’s decision. The matter was remanded for the WCJ to consider the merits of Arrant’s claim that the medical director failed to properly apply the medical treatment guidelines when denying the lumbar MRI requested by Dr. Brown. Arrant v. Wayne Acree PLS, Inc., 2015-0905 (La. 1/27/16), 187 So.3d 417.
On remand, the WCJ concluded that there was sufficient evidence in the medical records to support granting the second MRI request. The WCJ reversed the decision of the director and awarded Arrant $800 as reimbursement for the MRI. It also awarded Arrant a penalty of $2,000 and an attorney fee of $5,000. Aeree and LWCC appealed the assessment of the penalty and award of attorney fees. Arrant answered the appeal seeking an increase in the attorney fee award as well as an additional attorney fed for this appeal.
DISCUSSION

Entitlement to penalties and attorney fees

La. R.S. 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer’s or insurer’s failure to authorize medical treatment. La. R.S. 23:1201(F)(2) states that this Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control,
|fiThe WCJ’s grant or denial of penalties and attorney fees under the workers’ compensation statute is subject to manifest error review. Thomas v. Browning-Ferris Inc., 2004-1584 (La. 2/25/05), 894 So.2d 1091; Tingle v. Page Boiler, Inc., 50,373 (La.App. 2 Cir. 1/13/16), 186 So.3d 220.
In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits. Koenig v. Christus Schumpert Health Sys., 44,244 (La.App. 2 Cir. 5/13/09), 12 So.3d 1037; Howard v. Holyfield Const., Inc., 38,728 (La.App. 2 *741 Cir. 7/14/04), 878 So.2d 875, writ denied, 2004-2303 (La. 1/7/05), 891 So.2d 684. Reasonably controverting a claim means that the employer or insurer has sufficient factual and medical information to reasonably counter that provided by the claimant. Maxwell v. Care Solutions, Inc., 50,088 (La.App. 2 Cir. 9/30/15), 179 So.3d 650, writ denied, 2015-1954 (La. 11/30/15), 184 So.3d 36; Massey v. Fresenius Med. Care Holding, 49,407 (La.App. 2 Cir. 11/19/14), 152 So.3d 1019, writ denied, 2014-2650 (La. 03/16/15), 160 So.3d 1290.
Arrant complained of low back and leg pain and tingling in his leg when he first met with Dr. Brown on August 16.[1] Dr. Brown reviewed an X-ray of the lum-bosacral spine, but did not mention any perceived abnormality. Dr. Brown ordered four weeks of physical therapy, and administered two injections.
Dr. Katharine Rathburn, LWCC’s medical director, denied the first MRI request because: (1) there were no abnormal physical findings to be devaluated by MRI; (2) there was no report of any equivocal findings on X-ray to be evaluated by MRI; (3) Arrant was working and fit for duty, and there was no dysfunction to be evaluated by MRI; (4) Arrant was not a candidate for invasive treatment, so there was no indication that MRI findings would change the current plan of treatment; and (5) while Arrant was scheduled for physical therapy for rehabilitation, he had not received conservative treatment to date, so the MRI request was not based on failure to progress in therapy.
The rationale for the first denial by the OWC’s medical director was that only one record, dated August 16, 2012, had been submitted, and it showed a negative/normal lumbar exam, and normal strength and reflex, and no active therapy was noted. The director wrote that this documentation did not support an approval under the Medical Treatment Guidelines (“MTG”), and cited the guideline that while imaging studies are generally accepted, well-established and widely used diagnostic procedures, in the absence of myelo-pathy, progressive neurological changes or incapacitating pain, imaging is usually not appropriate until conservative therapy has been tried and failed.
Arrant was treated by Dr. Brown’s office next on September 7 and 25, 2012. Arrant reported that he was still having significant low back pain with radiculopa-thy down his legs and his buttocks. He also reported having left leg weakness. Knee jerk and ankle jerk reflexes were abnormal. Dr. Brown took Arrant off work for three months, and again requested an MRI.
In denying the second MRI request, Dr. Rathburn stated that it was being denied for the same reasons as the first because the additional visit did not provide documentation warranting her to change her decision. Dr. LRathburn noted: (1) there were no abnormal objective physical findings to be evaluated; (2) there was no equivocal finding on X-ray; (3) there was no dysfunction to be evaluated since Arrant worked three months on full duty following the accident; (4) Arrant was not a candidate for any invasive treatment, so pretreatment MRI was unnecessary; (5) there was no information about the physical therapy and its effect on pain and function; and (6) Arrant had been taken off work without justification because *742 there was no dysfunction to justify limiting his work, and Dr. Brown failed to provide work limitations as required by the MTG when regular duty is not advised.
The rationale for the second denial by the OWC’s medical director was that notes from the September 25 office visit showed that Arrant had normal lumbosacral spine motion, negative SLR, normal motor exam, and had been taken off work without documentation or support. In addition, no results of active therapy intervention had been documented. Among the MTG provisions cited by the medical director again was:
Imaging studies are generally accepted, well-established and widely used diagnostic procedures. In the absence of myelopathy, progressive neurological changes or incapacitating pain, imaging is usually not appropriate until conservative therapy has been tried and failed.
Aeree and LWCC contend that the denial of the second MRI request was justified because Arrant presented no documentation showing that physical therapy had failed. However, the guidelines recommend that six to eight weeks of treatment are usually an adequate period of time before an imaging procedure is in order, but that clinicians should use judgment in this regard. Dr. Brown used his ¡¿judgment to again ask for a lumbar spine MRI after prescribing four weeks of physical therapy.
Arrant’s pain was worsening in the month that followed the accident, which prompted him to meet with Deal. Although he continued working after the accident and even after meeting with Dr. Brown on August 16, Dr. Brown eventually took Arrant off work.
Aeree and LWCC also contend that they could rely on the decision of the OWC medical director as a basis to deny the lumbar MRI. While this may be true for the first denial, Aeree and LWCC were not in possession of the October 2012 OWC determination when they denied the second MRI request. Moreover, Aeree and LWCC must rely on competent medical evidence when the decision was made to deny the second MRI request. See Ardoin v. Calcasieu Parish Sch. Bd., 2015-814 (La. App. 3 Cir. 2/3/16), 184 So.3d 896, writ denied, 2016-0641 (La. 5/27/16), 192 So.3d 738.
Aeree and LWCC did not appeal the WCJ’s decision to overturn the director’s decision that the lumbar MRI was not necessary under the MTG. Such a decision by the OWC medical director can be reversed only upon a showing by clear and convincing evidence that the decision was not in accordance with the MTG.
Based upon this record, we cannot conclude that the WCJ was manifestly erroneous in determining that Aeree and LWCC had not reasonably controverted the second MRI request.

Answer

Arrant contends that the $5,000 attorney fee award was abusively low in light of the extensive work performed by his attorney in handling the lumbar MRI issue. We agree with Arrant, although we note that the ^prescription issue was not the only issue before this court on the prior appeal. Accordingly, we increase the award to $7,500.
Arrant also seeks additional attorney fees for this appeal. It is within the appellate court’s discretion to award or increase attorney fees to a workers’ comp claimant for defending an unsuccessful appeal. Frith v. Riverwood, Inc., 2004-1086 (La. 1/19/05), 892 So.2d 7; Key v. Monroe City Sch. Bd., 45,096 (La.App. 2 Cir. 3/10/10), 32 So.3d 1144, 256 Ed. Law Rep. 504. We conclude that an additional award of $2,500 is appropriate to compensate Ar *743 rant’s counsel for work performed in connection with this appeal.
DECREE
We amend the judgment to increase the attorney fee award to $7,500. We also award additional attorney fees of $2,500 for this appeal. At Acree’s and LWCC’s costs, the judgment as amended is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.

. We note that the medical records were not part of the prior appeal record that was sent to this court as an exhibit with the current appeal, Nevertheless, both parties highlighted the relevant portions of Dr. Brown's records in their briefs as well as during their arguments before the WCJ at the hearing following remand.