STONE, J.
St. Francis Medical Center appeals the judgment of the workers' compensation judge which ordered the reinstatement of Thomas Bradley's temporary total disability benefits and the payment of Bradley's neck surgery upon his completion of a favorable psychological evaluation. For the following reasons, we affirm in part, as amended, and reverse in part.
FACTS AND PROCEDURAL HISTORY
On December 10, 2014, Thomas Bradley ("Bradley") was employed by St. Francis Medical Center ("Defendant") as a delivery truck driver. Bradley was unloading laundry during a delivery to another facility when a "heavy" laundry bin tilted over onto him. In an effort to stop the laundry bin from knocking him to the ground, Bradley injured his neck, back, and shoulders.
After the accident, Bradley reported to Defendant's occupational medicine department, where he was evaluated by physician assistant, Roger Wilson ("Wilson"). Bradley complained of back, shoulder, and neck pain. Wilson diagnosed Bradley with lumbago, cervicalgia, and shoulder pain. He recommended medication and placed Bradley on the following work restrictions: 1) no lifting over 15 pounds; 2) no bending or stooping; and, 3) no pushing or pulling greater than 15 pounds. One week later at a follow-up appointment, Bradley reported continued back, shoulder, and neck pain. Thereafter, Bradley began physical therapy.
On January 5, 2015, Bradley visited Dr. Douglas Brown ("Dr. Brown"), an orthopedic surgeon, for his continued back, shoulder, and neck pain. This was not the first time Bradley had visited Dr. Brown complaining of neck and back pain. On October 21, 2014, Bradley visited Dr. Brown for neck and lower back pain. During the visit, Bradley also complained of pain and weakness in both arms and wrists. On October 29, 2014, Dr. Brown performed a cervical MRI evaluation, which indicated disc degeneration at C4/C5, C5/C6, and C6/C7, with moderate central stenosis at C5/C6. Among other things, Dr. Brown concluded Bradley suffered from degenerative cervical disc disease.[1]
At the January 5, 2015 visit, Bradley stated the December 10, 2014 work accident had worsened his prior neck and back issues. Bradley was examined by Dr. Brown's physician assistant, Stephanie Spangler. She noted Bradley had: 1) continued cervical pain with radiculopathy into his bilateral shoulders; 2) arm weakness and numbness in both hands; 3) lower back pain with radiculopathy into both buttocks and posterior legs to his knees; and 4) bilateral foot numbness. Notably, Bradley *726 did not experience radiculopathy at his October 21, 2014 visit. Dr. Brown affirmed his prior diagnosis of degenerative cervical disc disease. Since Bradley was already being treated by Defendant's occupational medicine department, Dr. Brown recommended Bradley continue the department's treatment plan, including physical therapy, prescribed medications, and work restrictions.
Disappointed with his progress from the treatment plan, Bradley requested an evaluation by a neurosurgeon of his choice on March 18, 2015. Defendant approved Bradley to see Dr. Bernie McHugh ("Dr. McHugh"), a neurosurgeon referred by Dr. Brown to Bradley. On May 7, 2015, Bradley was examined by Dr. McHugh. Bradley claimed the physical therapy had "worsened both his cervical and [lower] back pain and has caused the numbness and tingling in [his] left hand which was not there prior." Bradley stated his new position with Defendant as a security guard required him to sit for long periods of time, which increased his cervical and lower back pain. Dr. McHugh reported a "jerking-type movement" of both Bradley's upper and lower extremities. Dr. McHugh recommended a repeat MRI evaluation of Bradley's cervical spine and advised him to cease physical therapy until the repeat MRI was reviewed.
After approval from Defendant, the repeat MRI was performed on June 12, 2015. On July 15, 2015, Dr. McHugh noted his comparative analysis of Bradley's October 2014 and June 2015 MRI films. Dr. McHugh stated Bradley's June 2015 MRI film showed a progression of the degeneration from his October 2014 MRI film. Bradley's October 2014 MRI film demonstrated "degenerative change mild at the C4/C5 and C6/C7 with moderate change and moderate stenosis at C5/C6." However, his June 2015 MRI film indicated a "large disc herniation at the C5/C6 with moderate to severe stenosis with milder herniations at the C4/C5 and C6/C7." Based on his findings, Dr. McHugh recommended Bradley undergo C4/C5, C5/C6, and C6/C7 anterior cervical discectomy and fusion ("ACDF surgery"). Dr. McHugh also stated Bradley should not return to work until the progression of his condition was sufficiently addressed.
Thereafter, Defendant initiated weekly temporary total disability benefits ("TTD benefits") to Bradley in the amount of $337.98 a week. Notwithstanding, Defendant began investigating whether Bradley's condition was related to the December 10, 2014 work accident. During the course of its investigation, Defendant learned Bradley received treatment for cervical and lumbar disc issues prior to the work accident. Defendant consulted Dr. Curtis Partington ("Dr. Partington"), a board-certified diagnostic radiologist, and asked him to provide a comparative analysis of Bradley's two MRI films. On August 18, 2015, Dr. Partington issued a report on his findings.
Dr. Partington found there were disc herniations present at C4/C5, C5/C6, and C6/C7 on both the October 2014 and June 2015 MRI films. Dr. Partington measured the herniations using an electronic measuring tool. Dr. Partington determined C4/C5 and C6/C7 remained relatively the same size; however, C5/C6 measured 4 millimeters on the October 2014 MRI film, but only 3 millimeters on the June 2015 MRI film. Thus, the size of C5/C6 had decreased by 25%. Dr. Partington also found some disc bulging and osteophyte at T1/T2 and T2/T3, which had the appearance of a chronic condition. Overall, Dr. Partington doubted the changes on the June 2015 MRI film were related to Bradley's work accident.
*727 On August 19, 2015, Dr. McHugh sent Defendant a LWC-WC-1010 form requesting authorization for Bradley's ACDF surgery. Defendant denied the request pending a psychological evaluation pursuant to the Louisiana Workers' Compensation Medical Treatment Guidelines. On October 20, 2015, Dr. Darren Strother ("Dr. Strother") conducted Bradley's psychological evaluation. Bradley had prior mental health issues, including diagnoses of alcoholism and psychotic disorder NOS (Not Otherwise Specified). In a report dated December 10, 2015, Dr. Strother stated he "would not recommend surgery until [Bradley] is re-established with a psychiatrist, particularly in light of his relatively recent discontinuance of antipsychotic medication and his history of hallucinations."
On November 5, 2015, Bradley was evaluated by Dr. Donald Smith ("Dr. Smith"), a board-certified neurosurgeon. Defendant wanted a second medical opinion on the causal relationship between Bradley's disabling condition and the work accident. In his report, Dr. Smith opined that the degenerative changes present on the October 2014 and June 2015 MRI films were "chronic and longstanding in nature and not the type [of] changes that would ordinarily be expected as the result of an acute single episode of trauma."[2] He found "no neurological or other musculoskeletal abnormalities or deficits." Dr. Smith stated Bradley did not need further medical or surgical treatment and could continue his regular work activities with no restrictions.
On December 4, 2015, Defendant issued a LWC-WC-1002 form ("1002 Form") terminating Bradley's TTD benefits, effective December 20, 2015. Defendant cited "causation" as the reason for termination. On December 11, 2015, Bradley filed a LWC-WC-1008 form ("1008 Form") with the Office of Workers' Compensation ("OWC"), challenging the termination of his benefits. He also requested Defendant be assessed penalties and attorney fees. The 1008 Form made no reference to the denial of Bradley's ACDF surgery. Defendant answered the 1008 Form asserting Bradley's benefits were terminated "based on the lack of a causal connection between the injuries and/or symptoms for which [Bradley] is seeking benefits and the December 10, 2014 accident."
A trial on the matter was held on June 30, 2016. The workers' compensation judge ("WCJ") was presented with testimony from Bradley, Wilson, and Penny Whitehead ("Whitehead"), Defendant's workers' compensation coordinator. Numerous medical records, depositions, and claims documents were admitted into evidence. On September 26, 2016, in its oral reasons for judgment, the WCJ found Bradley suffers from a work-related injury and is entitled to the reinstatement of his TTD benefits, effective December 21, 2015. The WCJ stated the benefits are to continue until Dr. McHugh releases Bradley to work. Additionally, the WCJ found Bradley is entitled to ACDF surgery, after completing "a regimen of psychological evaluations and treatment as recommended by [Dr. Strother]." A final judgment on the matter was signed on October 27, 2016. This appeal followed.
DISCUSSION
Burden of Proof
Defendant argues the evidence presented at trial failed to establish Bradley's disabling condition was caused by the December *728 10, 2014 work accident. Defendant asserts the evidence presented at trial demonstrates Bradley's disabling condition was caused by degenerative disc conditions that manifested prior to the accident. In support of this assertion, Defendant points to the testimony and documentary evidence provided by Drs. Brown, Partington, and Smith. Since Bradley's disabling condition was not caused by the work accident, Defendant contends the WCJ erred in reinstating Bradley's TTD benefits and ordering it to pay for Bradley's ACDF surgery.
To obtain an award of TTD benefits, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(1)(c) ; Henderson v. Graphic Packaging Int'l, Inc. , 48,491 (La. App. 2 Cir. 11/20/13), 128 So.3d 599, 605 ; Buxton v. Iowa Police Dep't , 2009-0520 (La. 10/20/09), 23 So.3d 275, 288 ; City of Shreveport v. Casciola, 43,132 (La. App. 2 Cir. 03/26/08), 980 So.2d 203, 209. The claimant in a workers' compensation case has the burden of establishing his disability and its causal relation with the work-related accident by a preponderance of the evidence. Walton v. Normandy Village Homes Ass'n., Inc. , 475 So.2d 320 (La. 1985) ; Modicue v. Graphic Packaging , 44,049 (La. App. 2 Cir. 02/25/09), 4 So.3d 968, 971. The burden is met when the evidence, taken as a whole, shows that it is more probable than not that the work-related accident somehow caused or contributed to the disability; but, it is not necessary that the exact cause be found. Modicue, supra.
A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated, or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors , 93-1402 (La. 01/14/94), 630 So.2d 689 ; McCoy v. W.A. Kendall & Co., Inc., 50,187 (La. App. 2 Cir. 11/25/15), 181 So.3d 817, 822 ; Henderson, supra ; Modicue, supra . The preexisting condition is presumed to have been aggravated by the accident if the employee proves (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Peveto, supra ; McCoy, supra ; Henderson, supra ; Modicue, supra . Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or combine with the preexisting disease or infirmity to produce his disability. Peveto, supra ; McCoy, supra ; Henderson, supra.
The opinion of the treating physician should be accorded greater weight than that of a physician who sees the patient only once or twice. Henderson, supra ; McCoy, supra . However, the treating physician's testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Id.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Buxton, supra ; Casciola, supra. Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Buxton, supra ; Casciola, supra. To reverse a factfinder's determination *729 under this standard of review, an appellate court is obliged to satisfy the following two-step process based on the record as a whole: 1) there must be no reasonable factual basis for the trial court's conclusion; and 2) the finding must be clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC , 2014-2592 (La. 12/08/15), 193 So.3d 1110, 1116 ; Henderson, supra .
Under manifest error review, the issue to be resolved is not whether the factfinder was right or wrong, but whether the factfinder's conclusion was a reasonable one. Hayes, supra ; Henderson, supra . After a complete review of the record, we find a factual basis for the WCJ to conclude the work accident contributed to Bradley's disabling condition. Bradley testified that the laundry bin involved in the work accident weighed approximately 1,000 pounds, and that his neck and back pain significantly intensified after the accident. The WCJ found Bradley credible and his testimony very persuasive.
There was conflicting medical testimony as to whether the work accident contributed to the progression of Bradley's cervical disc degeneration. Dr. Brown was the only physician to treat Bradley before and after the work accident. The October 2014 MRI performed by Dr. Brown indicated Bradley's pre-accident neck and back pain was caused by degenerative cervical and lumbar disc disease. Less than a month after the work accident, Bradley was evaluated by Dr. Brown's physician assistant, and Bradley complained his symptoms had intensified since the work accident. He was experiencing radiculopathy that was not present prior to the work accident. Dr. Brown referred Bradley to Dr. McHugh and testified he would concur with Dr. McHugh's findings.
In a comparative analysis of Bradley's MRI films, Dr. McHugh found significant degenerative changes at C4/C5, C5/C6, and C6/C7, including a large disc herniation at C5/C6. Dr. McHugh reported Bradley's neck and back pain had worsened since the work accident. Dr. McHugh recommended Bradley undergo ACDF surgery. He stated Bradley should not return to work until his disabling condition was sufficiently addressed. Drs. Partington and Smith found degenerative changes between the October 2014 and June 2015 MRI films, but they concluded the changes were the result of a chronic degenerative condition and not the work accident. Furthermore, Dr. Smith opined ACDF surgery was unnecessary and Bradley could return to work with no restrictions.
Ultimately, the WCJ relied on the medical testimony of Bradley's treating physicians, Drs. Brown and McHugh, as opposed to Drs. Partington and Smith. Henderson, supra ; McCoy, supra . Drs. Brown and McHugh treated Bradley on multiple occasions. Dr. Partington did not examine Bradley, and Dr. Smith examined Bradley only once. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Hayes, supra ; Henderson, supra. As such, we cannot find manifest error in the WCJ's conclusion.
Approval of ACDF Surgery by Medical Director
Notwithstanding the issue of causation, Defendant argues the WCJ erred by ordering the approval of Bradley's ACDF surgery pending a favorable psychological evaluation because the issue of Bradley's entitlement to ACDF surgery was prematurely before the WCJ. Defendant states Bradley circumvented the administrative procedures required by La. R.S. 23:1203.1 ("Article 1203.1"), including obtaining a determination *730 from the OWC Medical Director ("the medical director") as to whether ACDF surgery is reasonable and necessary.
Defendant raised the issue of prematurity for the first time at the conclusion of trial. Defendant pointed out Bradley disputed only the termination of his TTD benefits and not the denial of his ACDF surgery in his 1008 Form. Defendant contends grounds to raise the issue of prematurity did not exist until Bradley's entitlement to ACDF surgery was discussed at trial. The WCJ issued its oral reasons for judgment and final judgment without addressing the issue of prematurity.[3] Silence in a judgment as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. M.J. Farms, Ltd. v. Exxon Mobil Corp. , 2007-2371 (La. 07/01/08), 998 So.2d 16, 26 ; L.J.D. v. M.V.S. , 2016-0008 (La. App. 1 Cir. 01/25/17), 212 So.3d 581, 584. Thus, the WCJ's silence on the issue of prematurity is considered a tacit rejection of the claim.
A workers' compensation claimant may recover costs of medical treatment that is reasonably necessary for the treatment of a medical condition caused by a work injury. La. R.S. 23:1203(A) ; Church Mut. Ins. Co. v. Dardar , 2013-2351 (La. 05/07/14), 145 So.3d 271 ; Thomas v. Marsala Beverage Co. , 50,062 (La. App. 2 Cir. 09/30/15), 179 So.3d 620, 623. Article 1203.1 requires the Director of the OWC to appoint a medical advisory council which, with the assistance of a medical director, is to develop medical treatment guidelines to be promulgated as the medical treatment schedule ("MTS"). Church Mut. Ins. Co., supra ; Dow v. Chalmette Rest., Ltd. , 2015-0336 (La. App. 4 Cir. 05/18/16), 193 So.3d 22, 1228. Thereafter, the medical treatment due by the employer to the employee "shall mean care, services, and treatment in accordance with the [MTS]." La. R.S. 23:1203.1(I) ; Dow, supra at 1229,. Article 1203.1 was enacted with the express intent that, with the establishment and enforcement of the MTS, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees. La. R.S. 23:1203.1(L) ; Thomas, supra .
In Dow, supra , the court enumerated the following process for obtaining "medical care, services, or treatment" under Article 1203.1:
(1) the medical provider submits to the employer/insurer a request for authorization; (2) the employer/insurer then must notify the medical provider of their *731 action on the request within five business days of receipt of the request; (3) if any dispute arises as to whether the recommended care, services, or treatment is in accordance with the MTS, or whether a variance from the MTS is reasonably required, any aggrieved party must file, within 15 calendar days, an appeal with the OWC medical director or associate director on Form 1009, Disputed Claim for Medical Treatment; (4) the medical director/associate medical director must render a decision as soon as practicable, but in no event, not more than 30 calendar days from the date of filing; (5) after the decision by the medical director/associate medical director, any party who disagrees with the decision may appeal by filing a Form 1008 Disputed Claim for Compensation[.]
See La. R.S. 23:1203.1(J)(1) and (K).[4]
According to La. R.S. 23:1314(D), "[d]isputes over medical treatment pursuant to the medical treatment schedule shall be premature unless a decision of the medical director has been obtained in accordance with R.S. 23:1203.1(J)."
The denial of Bradley's ACDF surgery was prematurely before the WCJ because Bradley failed to file a LWC-WC-1009 form appealing the denial with the medical director. Considering the MTS was enacted to provide "efficient and timely" medical treatment to injured employees, this court is inclined to affirm the portion of the WCJ's judgment ordering Defendant to approve Bradley's ACDF surgery. Nonetheless, Bradley failed to dispute the denial of his ACDF surgery in his 1008 Form, and the issue of Bradley's entitlement to ACDF surgery was never addressed until trial. Consequently, we reverse the portion of the WCJ's judgment ordering the approval of Bradley's ACDF surgery pending a psychological evaluation. Bradley is not precluded from obtaining approval of his ACDF surgery in the future by following the proper administrative procedures pursuant to Article 1203.1.
Correct Date for Reinstatement of TTD Benefits
In its oral reasons for judgment, the WCJ stated Bradley was entitled to the reinstatement of TTD benefits beginning December 21, 2015. However, in its final judgment, the WCJ ordered the reinstatement of Bradley's TTD benefits beginning December 5, 2015. The record indicates Bradley received TTD benefits through December 20, 2015. Thus, the WCJ committed *732 legal error, and we amend the final judgment to reinstate Bradley's TTD benefits beginning December 21, 2015.
Attorney Fees
Bradley argues the WCJ erred by not assessing penalties and attorney fees for Defendant's failure to sufficiently support the termination of his TTD benefits and the denial of his ACDF surgery.
An employer's failure to provide payment of benefits or authorize medical treatment will result in a penalty and attorney fees "unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La. R.S. 23:1201(F)(2) ; Authement v. Shappert Eng'g , 2002-1631 (La. 02/25/03), 840 So.2d 1181 ; Friedman v. Ecolab, Inc. , 50,358 (La. App. 2 Cir. 02/03/16), 187 So.3d 491, 498 ; Arrant v. Wayne Acree PLS, Inc. , 51,238 (La. App. 2 Cir. 05/02/17), 218 So.3d 737, 740. In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits. Brown v. Texas-LA Cartage, Inc., 98-1063 (La. 12/01/98), 721 So.2d 885, 890 ; Arrant, supra ; Koenig v. Christus Schumpert Health Sys. , 44,244 (La. App. 2 Cir. 05/13/09), 12 So.3d 1037, 1045.
The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees, and his or her decision will not be disturbed absent manifest error. Alexander v. Pellerin Marble & Granite , 93-1698 (La. 01/14/94), 630 So.2d 706 ; Friedman, supra ; Arrant, supra .
The WCJ denied Bradley's request for an award of penalties and attorney fees because it found Defendant had a reasonable basis for denying the benefits. Considering evidence of Bradley's preexisting degenerative disc disease and the medical testimony provided by Drs. Partington and Smith, we find no manifest error in the WCJ concluding penalties and attorney fees were not warranted.
Additionally, Bradley requests attorney fees for work done on appeal. Generally, a workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal. Frith v. Riverwood, Inc. , 2004-1086 (La. 01/19/05), 892 So.2d 7 ; Arrant, supra . However, considering Defendant was partially successful on appeal and the WCJ's finding that attorney fees were not warranted at the trial level, we decline to award attorney fees for work done on appeal. See Robinson v. Calcasieu Par. Sch. Bd. , 2011-615 (La. App. 3 Cir. 11/02/11), 77 So.3d 1059, 1064, writ denied , 2011-2641 (La. 02/10/12), 80 So.3d 478.
CONCLUSION
For the foregoing reasons, the WCJ's judgment is affirmed as to the reinstatement of Bradley's TTD benefits and the denial of Bradley's request for penalties and attorney fees. The judgment is amended to reinstate the TTD benefits beginning December 21, 2015. The portion of the judgment ordering Defendant to approve Bradley's ACDF surgery is reversed. Costs of this appeal are assessed to Defendant.
AMENDED, AND AS AMENDED, AFFIRMED IN PART; REVERSED IN PART.
APPLICATION FOR REHEARING
Before BROWN, DREW, GARRETT and STONE, JJ.
Rehearing denied.

Dr. Brown also conducted a lumbar MRI evaluation and diagnosed Bradley with degenerative lumbar disc disease.

Dr. Smith found mild degenerative changes at the C4/C5, C5/C6, and C6/C7. He found the degenerative changes were "more pronounced" at the C5/C6 with a moderate bulge.

When Defendant brought up the issue of prematurity, the WCJ noted that an issue of prematurity is normally addressed by filing a dilatory exception of prematurity. See La. C.C.P. art. 926. The exception of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. Williamson v. Hospital Serv. Dist. No. 1 of Jefferson , 2004-0451 (La. 12/01/04), 888 So.2d 782 ; Haygood v. Dies , 47,765 (La. App. 2 Cir. 05/15/13), 114 So.3d 1206, 1213. La. C.C.P. art. 926(B) provides that "[a]ll objections which may be raised through the dilatory exception are waived unless pleaded therein." La. C.C.P. art. 928 provides that "[t]he dilatory exception shall be pleaded prior to answer or judgment by default." Since Bradley failed to include the denial of his ACDF surgery in his 1008 form, Defendant argued it never received notice to file an exception of prematurity. Notably, in determining the issue of prematurity, workers' compensation judges are not bound by the articles in the Louisiana Code of Civil Procedure requiring the filing of an exception of prematurity prior to or with the filing of the Answer. Dow v. Chalmette Rest., Ltd. , 2015-0336 (La. App. 4 Cir. 05/18/16), 193 So.3d 1222, 1230-31 ; See La. R.S. 23:1317(A) ("The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided[.]").

La. R.S. 23:1203.1(J)(1) provides:
After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
La. R.S. 23:1203.1(K) provides:
After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.